## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JOHN ARNOLD and MONESIA YOUNGBLOOD, Individually and as Co-Administrator of the Estate of COREY WARD, Deceased | : : : : | |
| | : | |
| Plaintiffs, | : : | CIVIL ACTION NO: 1:03-CV-0087-CAP |
| vs. | : : | |
| RAYMOND S. BUNN, individually and in his Official Capacity as a Police Officer of the City of Atlanta Police Department; TERRY L. MULKEY, individually and in his official capacity as a Police Officer of the City of Atlanta Police Department; RICHARD PENNINGTON, Individually and in his Official Capacity as Chief of Police of the City of Atlanta Police Department; CITY OF ATLANTA, a Municipal Corporation of the State of Georgia; and JOHN DOES, Nos. 1 through 3, | : : : : : : : : : : : : : : | |
| _____ | : | |

## CITY OF ATLANTA'S BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant City of Atlanta and files its Brief in Support of

Motion for Summary Judgment.[1]

---

[1] Plaintiffs have already dismissed without prejudice City Defendants Mulkey and Pennington from this lawsuit.

## I.    <u>STATEMENT OF THE CASE</u>

Plaintiffs, the parents of Corey Ward, filed suit against City of Atlanta and Officer Raymond Bunn, claiming that they were liable for the shooting death of Corey Ward.   Specifically, Plaintiffs allege that Defendant Bunn is liable for alleged constitutional, statutory and state law violations.[2]   Plaintiffs further allege that the City of Atlanta had a policy and practice that "authorized certain officers, including Defendants Bunn . . . to cover up the racial profiling and excessive force despite the lack of probable cause to arrest"[3] and "refused to adequately train, direct, supervise, or control Defendants Bunn . . . so as to prevent the violation of Corey Ward's constitutional rights."[4]   However, Plaintiffs' claims against the City of Atlanta are entirely without merit and thus must be dismissed.

## II.    <u>STATEMENT OF FACTS</u>

Plaintiffs' case has its genesis in an incident occurring on the night of July 12, 2002, through the early morning hours of July 13, 2002.[5]   On that date, Officers Terry Mulkey and Raymond Bunn were patrolling the Buckhead Village area of Atlanta in an unmarked vehicle. Each officer was wearing a conspicuously

---

[2] *See generally*, Complaint.
[3] *Id.* at ¶33.
[4] *Id.* at ¶34.
[5] *Id.* at ¶¶13, 14.

displayed badge around his neck and clothing with "Atlanta Police Department" clearly marked.[6]  Corey Ward and several friends were also in the area.[7]

As they patrolled the area, Officer Mulkey witnessed a suspect breaking into a Buick Grand National.[8]  The suspect began running across the parking lot and Officer Bunn initiated a foot pursuit.[9]  The suspect then entered a Tahoe driven by Mr. Ward and Mr. Ward began to drive off.[10]   Officer Bunn stopped his foot pursuit and ran back to his APD vehicle preparing to follow the Tahoe in the APD vehicle.[11]  As Officer Bunn approached his APD vehicle, he saw Officer Mulkey standing outside the vehicle with his gun drawn. [12] Officer Bunn then realized that the Tahoe had changed direction and was driving directly towards them.[13]   Mr. Ward stopped the Tahoe and Officer Bunn approached the Tahoe again by foot.[14]  Then, suddenly and without warning, Mr. Ward accelerated forward and in Officer Bunn's direction.[15]

---

[6] *Id.* at ¶15; Deposition of Raymond Bunn, pp. 82-83.
[7] Complaint, ¶13.
[8] Deposition of Raymond Bunn, p. 70.
[9] *Id.* at 67-68; 72-75.
[10] *Id.* at 78.
[11] *Id.* at 91.
[12] *Id.* at 92.
[13] *Id.*
[14] Id. at 100, 119.
[15] *Id.* at 119.

As Mr. Ward continued to drive in Officer Bunn's direction, Officer Bunn fired his weapon at Mr. Ward, striking him in the head.[16]  Mr. Ward died as a result of the gunshot wound to his head.[17]  Immediately after the shooting, the City commenced an internal investigation and Mr. Bunn was placed on desk duty, where he remained until his resignation from the City of Atlanta.[18]  After his departure from the City of Atlanta, the City's internal investigation was "exceptionally closed,"[19] a designation commonly used when an officer resigns during an investigation.[20]

## III.   ARGUMENT AND CITATION OF AUTHORITY

### A. Summary Judgment Standard

Summary judgment is appropriate when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[21]  The court should view the evidence and any inferences that may be drawn in the light most favorable to the non-movant.[22]  The party seeking summary judgment must first

---

[16] See generally, *Id.* at 62-64, 141-145.
[17] Complaint ¶18.
[18] Deposition of Raymond Bunn, pp. 49-52.
[19] Deposition of Raymond Bunn, p. 52.
[20] Blaricom Deposition, p. 83.
[21] Fed. R. Civ. P. 56(c).
[22] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

identify grounds that show the absence of a genuine issue of material fact.[23]   The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[24]

A dispute is genuine if the evidence is such that the factual issues may reasonably be resolved in favor of the nonmoving party.[25]   However, Rule 56 "[b]y its very terms . . . provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."[26]   "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."[27]   An issue is not genuine if it is unsupported by evidence or if it is created by evidence that is "merely colorable" or is "not significantly probative."[28]   Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential

---

[23] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[24] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).
[25] *Id*. at 248.
[26] *Id*. (emphasis in original).
[27] *Matsushita Elec. Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-587 (1986).
[28] *Anderson*, 477 U.S. at 249-50.

element of the nonmoving party's case.[29]   Thus, to create a genuine issue of material fact for trial, the party opposing the summary judgment must come forward with specific evidence of every element essential to his case with respect to which (1) he has the burden of proof, and (2) the summary judgment movant has made a plausible showing of the absence of evidence of the necessary element.[30] When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.[31]   "Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."[32]

**B. <u>The City of Atlanta is Entitled to Summary Judgment As to Plaintiffs'</u><br><u>Federal Claims.</u>**

Plaintiffs seek to hold the City of Atlanta liable for the actions of the officers.   First, in *City of Los Angeles v. Heller*, the United States Supreme Court made clear that if there is no constitutional violation, there can be no liability on the part of the individual officer or the governmental body.[33]   Second, in this

---

[29] *Id*. at 248.

[30] *Celotex*, 477 U.S. at 323.

[31] *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

[32] *Oxford Asset Mgmt. Ltd. v. Jajaris*, 297 F.3d 1182, 1188 (11th Cir. 2002).

[33] 475 U.S. 796 (1986); see also *Vinyard v. County of Murray*, 990 F .2d 1207, 1211 (11th Cir. 1993).

circuit, the courts have held that in a Section 1983 case against a municipality, the court must find a violation of a constitutional right prior to finding municipal liability.[34]   A *priori,* if this court finds that Officer Bunn did not violate the decedent's constitutional rights, then Defendant City of Atlanta is not liable.[35]

However, even assuming Officer Bunn violated the decedent's constitutional rights, a municipal government may only be held liable under 42 U.S.C. Section 1983 where an official policy or custom causes the alleged constitutional injury.[36] A municipality may not be held liable on a theory of *respondeat superior.*[37] Municipal entities cannot be held liable simply for employing an alleged tortfeasor.[38]  Instead, liability can only be imposed for injuries inflicted pursuant to an official "policy or custom" of the municipality.[39]

---

[34] *Wyke v. Polk County School Board*, 129 F.3d 560, 568-69 (11th Cir. 1997); *Rooney v. Wilson*, 101 F.3d 1378, 1381 (11th Cir. 1996); *Skinner v. City of Miami*, 62 F.3d 344, 348 (11th Cir. 1995).

[35] It is the City of Atlanta's understanding that Officer Bunn also intends to file a Motion for Summary Judgment. As such, if this Court grants Officer Bunn's Motion for Summary Judgment, the City's Motion must also be granted and no further analysis of this issue is necessary.

[36] *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

[37] *Id.* at 691.

[38] *Board of County Commissioners of Bryan County, Okla. V. Brown*, 520 U.S. 397 (1997).

[39] *Monell*, 436 U.S. at 694.

"Where a Plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."[40] Where it is claimed that an employee was encouraged to act lawfully by his or her recognition that the municipality would not act to stop such conduct, it must be shown that the municipality continued to adhere to an approach that it knew or should have known had failed to prevent tortuous conduct in the past and was likely to result in such conduct in the future.[41]   The municipality must have acted with deliberate indifference to the known or obvious consequences.[42]   Plaintiff has not satisfied this standard as to the municipal Defendant City of Atlanta.

In order to withstand a motion for summary judgment on the issue of municipal liability, Plaintiffs must present facts from which a jury could find the existence of a policy, practice, or custom leading to a violation of their constitutional rights.[43]   Plaintiff must identify and produce evidence of (1) the existence of some policy, custom, or practice; (2) which is attributable to the municipality; (3) that was the moving force behind, and (4) a constitutional

---

[40] *Brown*, 520 U.S. at 405.
[41] *Id.* at 407.
[42] *Id.*
[43] *Riley v. Newton*, 94 F.3d 632, 638 (11th Cir. 1996).

injury.[44] .[45]  Proof of a single incident of unconstitutional activity is not sufficient to impose liability" against a municipality. [46] "A single incident would not be so pervasive as to be a custom,"[47] because a custom must be such "a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it."[48]  This requirement of proof "prevents the imposition of liability based upon an isolated incident,"[49] and "'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality,'" [50]"In the absence of a series of constitutional violations from which deliberate indifference can be inferred, the plaintiff must show that the policy itself is unconstitutional."[51]  Unless the policy itself is unconstitutional, considerably more proof than the single incident will be necessary in order to establish both the requisite fault on the part of

---

[44] *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

[45] *City of Oklahoma City v. Tuttle*, 471 U.S. 823-24 (1985); *Parker v. Williams,* 862 F.2d 1471, 1477-78 (11th Cir. 1989).

[46] *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

[47] *Grech v. Clayton County*, 335 F.3d  1326, 1330 n.6 (11th Cir. 2003).

[48] *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)

[49] *McDowell v. Brown* 392 F.3d 1283, 1290 (11th Cir. 2004).

[50] *Id.* (*quoting Bd. of Cnty. Comm'rs v Brown*, 520 U.S. 397, 403-04 (1997).

[51] *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 531 (7th Cir. 2000).

the municipality and the casual connection between the policy and the alleged constitutional deprivation.[52]

A "policy" is a decision officially adopted by the municipality or created by an official of such rank that he or she is acting on behalf of the municipality.[53] "Policy" denotes a specific decision or set of decisions designed to carry out a chosen course of action.[54]   A "custom", on the other hand, is a practice so well-settled and permanent that it takes on the force of law.[55]   Where an official's acts are not the result of any formal or informal city policy or custom, but are random acts or isolated incidents, such acts are insufficient to establish municipal liability.[56]

Further, while a municipality may not have an unconstitutional policy, practice or custom, it may be also held liable under a ratification theory.  However, "[f]or plaintiffs to state a successful § 1983 claim against a municipality based on a ratification theory, however, 'they must demonstrate that local government

---

[52] *Tuttle*, 471 US at 823-824; *Pembauer v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Williams v. City of Albany*, 936 F.2d 1256, 1261 (11th Cir. 1991).

[53] *Pembauer*, 475 US 469 (1986).

[54] *Id.*, *See also City of Oklahoma City v. Tuttle*, 471 US at 823.

[55] *Adickes v. S.H. Kress and Co.*, 398 U.S. 144 (1979); *Depew v. City of St.Mary's* 787 F.2d 1496 (11th Cir. 1986).

[56] *Anderson v. City of Atlanta*, 778 F.2d 678, 685 (11th Cir. 1985); *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986); *McMillian v. City of Lockmart*, 653 F.2d 907, 910 (5th Cir. 1981).

policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis . . . .'"[57]

In the case at bar, Plaintiffs' federal claims against the City of Atlanta fail because Plaintiffs have failed to prove (1) the existence of any policy, practice or custom of the City of Atlanta that was the moving force behind the alleged unconstitutional violations by Officer Bunn or  (2) that the City of Atlanta ratified Officer Bunn's allegedly unconstitutional violations.

1. No Evidence Exists that Any City of Atlanta's Policies, Customs and Practices Was the Moving Force Behind the Alleged Constitutional Violations by Officer Bunn.

Although Plaintiffs seek to how the City of Atlanta liable for the alleged constitutional deprivation by Officer Bunn, they have failed completely to identify the existence of any policy, custom or practice of the City of Atlanta that was the moving force behind the alleged constitutional violation by Officer Bunn.   First, Plaintiffs' claims against the City of Atlanta are based upon a single occurrence – the shooting death of Mr. Ward - which cannot serve as the basis for a claim against the City of Atlanta.  Second, rather than identify any City of Atlanta policy that was the moving force behind the alleged constitutional violation by Officer

---

[57] *Garvie v. City of Fort Walton Beach*, 366 F.3d 1186, 1189  (11th Cir. 2004), citing *Thomas v. Roberts*, 261 F.3d 1160, 1175 n.12 (11th Cir. 2001), *vacated on other grounds by*, 536 U.S. 953, 122 S. Ct. 2653, 153 L. Ed. 2d 829 (2002), *reinstated by* 323 F.3d 950 (11th Cir. 2003).

Bunn, Plaintiffs have identified several City of Atlanta policies that specifically *prohibit* the behavior Officer Bunn is alleged to have engaged in during the subject incident (i.e., using deadly force to stop the driver of a moving vehicle). Specifically, Plaintiffs' expert D.P. Van Blaricom ("Blaricom") noted the following City of Atlanta policies:

- Policy requiring an officer to make every effort to avoid using his firearm;

- Policy prohibiting an officer from discharging his weapon from or at a moving vehicle unless the occupants are using deadly force by means other than the vehicle;

- Policy prohibiting an officer from discharging a firearm if the lives of innocent persons may be in danger.[58]

Blaricom further pointed out that "such a prohibition [as the one contained in the City of Atlanta's internal policies] against shooting at vehicles is a commonplace policy practice, because it is well recognized that shooting at a vehicle is neither necessary nor an effective means of defense[.]"[59]   As such, Plaintiffs claim that the City of Atlanta had a policy, custom or practice that was the moving force behind Officer's Bunn's purported unconstitutional actions is entirely without merit, since their own expert identified several City policies prohibiting officers from engaging in the alleged acts complained of in this case.  Plaintiffs' arguments are particularly

---

[58] Blaricom Expert Report, p. 7.
[59] *Id.*

disingenuous when Blaricom points out that such policies were in accord with similar policies throughout the nation.

Further, Plaintiffs also have no evidence of any policy, custom or practice of the City of Atlanta promoting, encouraging or condoning racial profiling.  As such, Plaintiffs' claims against the City of Atlanta are entirely without merit and must be dismissed.

    2.   <u>Plaintiffs' Argument that the City of Atlanta Ratified Officer Bunn's Alleged Unconstitutional Actions is Entirely Without Merit.</u>

In a desperate attempt to avoid dismissal of their claims against the City of Atlanta, Plaintiffs also claim that the City of Atlanta ratified Office Bunn's purported unconstitutional actions.  In asserting this argument, Plaintiffs rely on their expert Blaricom's review of five investigations by the Atlanta Police Department's Office of Professional Standards ("OPS") in which Mr. Bunn was alleged to have engaged in excessive force.[60]   Although Plaintiffs place great reliance on these investigations, their expert's review of these cases is cursory, at best, and provide no basis for his conclusions.  Specifically, of the five OPS investigations, four of them involved complaints that had nothing to do with Mr. Bunn's use of his weapon much less his use of his weapon to stop a moving

---

[60] *Id.* at 8-9.

vehicle.[61]    Indeed, Blaricom, who provides the only support for Plaintiffs

argument, admits to such in his testimony:

> Q.    Did any of those cases to your knowledge, involve use of firearm?
>
> A.    They did not.
> Q.    So it stands to reason that none of those cases involved use of a firearm and a moving vehicle.
>
> A.    Correct.[62]

Moreover, Blaricom admits that he has no reason to dispute OPS findings of 'non

sustained'[63].  He testifies that:

> Q.    Did you have an opportunity to review any type of testimony from any of the OPS officers that investigated these cases?
>
> A.    No, ma'am, I – I did not.
>
> Q.    Do you have any reason to dispute these findings of nonsustained.
>
> A.    I would have no way of doing that.[64]

---

[61] In fact, Blaricom points out that with regard to one of the four OPS Complaints that the "[e]xact nature of the complaint was not recorded but [Bunn] was accompanied by same partner as in this incident".  [Blaricom Expert Report, p. 8]. As such, the City of Atlanta is at a loss as to Blaricom can reach *any* determination regarding this incident based simply on the fact that the same partner was present during the instant incident when the nature of that OPS complaint was unknown.

[62] Blaricom Deposition, pp. 85-86.

[63] A "non-sustained" finding is an indication that insufficient evidence was developed to sustain the charge. The other options are "exonerated", "sustained" or "exceptionally closed", the latter being used where an officer leaves the City's employment prior to conclusion of the investigation.

[64] *Id.* at 86.

As such, the City of Atlanta is entirely at a loss as to how Plaintiffs can use these OPS files to support their claim of ratification against the City of Atlanta, when their own expert admits that he has no way of disputing the City's determination in these cases.

Moreover, Blaricom's review of the fifth OPS complaint – which relates to the subject incident -- also provides no support for Blaricom's conclusions. Although Officer Bunn testified that the case was "exceptionally closed,"[65] Blaricom sought no explanation of what that meant before concluding that the City failed to discipline Officer Bunn.   In fact, he claimed he was not aware that the City used the term "exceptionally closed" – which he acknowledged applied to cases when a person resigned during an investigation -- although he claims to have reviewed Officer Bunn's deposition.[66]

> Q.   Do you have – did you all have a finding such as exceptionally closed?
>
> A.   Well, a case would be exceptionally closed if a person resigned during an investigation.  That would – that would be an example.[67]
>
> -----
>
> Q.   Okay.   Do you have any understanding that APD uses the term "exceptionally closed."

---

[65] Deposition of Raymond Bunn, p. 52.
[66] Blaricom Deposition, pp. 83-84; Blaricom Expert Report, pp. 1-2.
[67]  Blaricom Deposition, p. 83.

A.      I wasn't aware of that, no.[68]

Indeed, although Blaricom claims that he lacked any understanding of how OPS handles investigations when there's a criminal charge (as there was in this case), he stated that he would expect the City to suspend its investigation until the criminal case was resolved.

Q.      Do you have any information as to how APD runs its or handles its investigations when there's a criminal charge?

A.      I cannot say specifically, no, ma'am.  I just know what the general practice is.

Q.      Okay.  Well, if I suggested to you that the APD OPS Department suspended their investigation until the criminal case was resolved, would you have any rebuttal or opposition to that?

A.      No.  I would expect that to be the case.[69]

As such, Blaricom's opinions are entirely without support and should be excluded.

Further, even assuming OPS improperly handled the five OPS complaints against Officer Bunn or some unconstitutional actions by Officer Bunn, Plaintiffs have nonetheless failed to show how those decisions rises to the level of the Chief of Police.   Indeed, in order to hold the City of Atlanta liable, Plaintiffs must prove that the highest decision maker (i.e., the Chief of Police) ratified those actions. However, while Blaricom concludes that the "chief policy maker has knowingly

---

[68] *Id.* at 84.
[69] *Id.* at 81.

ratified the previously described conduct of [Mr. Bunn], as being within the custom, policy and practice of the APD,"[70] he admittedly lacked <u>any</u> evidence that the chief decision maker signed off on the recommended disciplines.   While referencing the OPS investigations into the claim related to the subject incident, the following testimony was revealed:

> A.    The date was February 11th, 2003.    And that's preceded by a November 25[th], 2002, from Major Dunavant – or to – from Lieutenant Bowser, B-O-W-S-E-R, to Major Dunavant, and that gave an investigative disposition of not sustained on a Rule 609, Use of Firearms.
> And preceding that – no, that's – that was signed by the Commander of Internal Investigations that went to Dunovant, and then he recommended that – the same Rule 609, Use of Firearms, not sustained.  And from there it went to the chief, and I have nothing beyond that.
>
> Q.    Okay.  So the chief signed off on the not sustained?
>
> A.    I don't know, because I – I don't have anything beyond the major's recommendation to the chief.[71]

Blaricom testified further that he lacked any evidence that Chief Pennington, who was the final decision maker at the time, signed off on any of the investigations:

> Q.    Did you have find anywhere in your review of the OPS file that you reviewed that the chief policy maker, who I believe you have identified as Chief Pennington, signed off on any of the investigations.
>
> A.    I don't have that information.

---

[70] Blaricom Expert Report, p. 9.
[71] Blaricom Deposition, p. 78.

Q.      You don't have that information, or you didn't find that he signed off with you?

A.      Both.[72]

Still, without having any evidence that the Chief of Police signed off on the recommendation, Blaricom concludes that the chief decision maker ratified the conduct of Officer Bunn.  This conclusion is entirely without support or merit.

Ultimately, the City of Atlanta's policies do not authorize violations of the Constitution; therefore, summary judgment in favor of the City is proper. Furthermore, Plaintiff cannot produce evidence of any City policy that was the moving force behind the alleged injuries of Plaintiff.  Plaintiff has shown no evidence of an Atlanta policy that caused the alleged deprivation of Plaintiff's constitutional rights.  Therefore, Plaintiff's claims against the City of Atlanta must be dismissed.

c.  **Plaintiffs' State Law Claims Must Be Dismissed.**

1.  Plaintiffs' Negligence Claims Against the City of Atlanta Are Entirely Without Merit.

Plaintiffs also allege that the City of Atlanta's refused to or negligently

---

[72] *Id* at 87.

trained, supervised, direct, control, disciplined, selected or retained Officer Bunn.[73]

However, as noted above, Plaintiffs lacked any evidence of the City's negligence in this case.    Rather, Plaintiffs' statements amount to nothing more than self serving conclusory statements unsupported by the facts of this case.  Indeed, the conclusory nature of Plaintiffs' allegations are particularly evident since no evidence exists that Plaintiffs or their expert, whose opinion Plaintiffs' base their contentions, ever reviewed Officer Bunn's training records.[74] Plaintiffs' contention that the City refused or negligently trained Officer Bunn are particularly disingenuous when Officer Bunn testified that he received training on how to perform a felony stop (which Plaintiffs argue the instant situation constituted).  He testified as follows:

> Q.    Did you ever receive training on how to do a felony stop?
>
> A.    Yes, sir.
>
> Q.    Were you ever trained to approach a felony stop from the front of the suspected vehicle?
>
> A.    That was not – they did not show us that, no.
>
> Q.    You never was – in fact, you were told not to do a felony stop from the front of the vehicle, correct?

---

[73] Plaintiffs' expert states in his report that the City of Atlanta negligently trained, selected, supervised, disciplined and retained Officer Bunn.

[74] Blaricom's Expert Report, pp. 1-2 (where he specifies the documents he reviewed in reaching his opinion.  Noticeably missing from the list is Officer Bunn's training records).

A.    I believe they said if at all possible, you do not want to perform a felony stop from the front of the vehicle.

Q.    Why not?

A.    Because the suspect in the vehicle hold the upper hand.

Q.    In what way?

A.    Well, they don't have to put the vehicle in reverse.  They can accelerate toward you, you can get hit, they have suitable cover and you're in a bad position.

Q.    You understood all of that and was trained on that before this incident.?

A.    Oh, yes, sir.
Q.    And you appreciated that fact that it's dangerous to approach a vehicle for felony stop from the front of the vehicle?

A.    Yes, sir.[75]

Plaintiffs argue that it was Officer Bunn's failure to adhere to the City's felony stop policy that caused the death of Mr. Ward.  Yet, while seeking to hold Officer Bunn liable for failure to comply with the City's training, Plaintiffs also seek to hold the City liable for allegedly failing to train Officer Bunn, when the evidence clearly shows (and Plaintiffs rely on the fact that) the City trained Officer Bunn.  In other words, Plaintiffs' attempt to hold the City of Atlanta liable is nonsensical due

---

[75] Bunn Deposition, pp. 89-90.

to Plaintiffs' reliance on the City's proper training of Officer Bunn to hold him liable.

Further, Plaintiffs' contention that the City of Atlanta refused to or negligently supervised, directed, controlled or selected Officer Bunn are also entirely without merit since no evidence of any lack of or negligent supervision, direction or control or negligent selection exists in the record.   Moreover, Plaintiffs' negligent retention and discipline claims are further without merit since Plaintiffs' own expert (Blaricom) admitted that he couldn't "recall firing anybody for use of force" during his tenure as chief of the Bellevue Police Department.[76] As such, Plaintiffs cannot contend that the City improperly retained Officer Bunn due to non sustained excessive force claims when Blaricom failed to terminate anyone for a sustained excessive use of force.  Consequently, Plaintiffs' negligence claims against the City of Atlanta must be dismissed as they are entirely without merit.

    2.  <u>Plaintiff's State Law Claims Are Barred by the Doctrine of Sovereign Immunity.</u>

Pursuant to Article IX, Section II, Paragraph IX of the Constitution of the State of Georgia, it is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such

---

[76] Blaricom Deposition, pp. 81-82.

municipal corporations shall be immune from liability for damages.[77]   Sovereign immunity is a threshold issue and Plaintiff bears the burden of establishing that the City's alleged conduct is excepted from sovereign immunity. [78] Without a waiver of sovereign immunity, a municipal corporation cannot be liable for the torts of policemen or other officers engaged in the discharge of the duties imposed on them by law.[79]

Thus, governmental immunity precludes this lawsuit against the City unless the City waived its immunity by purchasing liability insurance, which it did not.[80] There being no evidence or allegation that the City purchased liability insurance such that it waived its sovereign immunity, Plaintiff's state law claims are barred by the doctrine of sovereign immunity and should be dismissed.  Furthermore, the City cannot be liable for the alleged torts of its police officers engaged in the discharge of the duties imposed on them by law.[81]   Therefore, even if the Defendant police officer committed torts under Georgia law, the City is not liable

---

[77] O.C.G.A. § 36-33-1.

[78] *Dept. of Transp. v. Cox,* 246 Ga. App. 221, 222 (2000); *Reidling v. City of Gainesville,* 280 Ga. App. 698, 701 (2006); *Scott v. City of Valdosta*, 280 Ga. App. 481, 484 (2006).

[79]  *Scott,* 280 Ga. App. at 485; O.C.G.A. § 36-33-3.

[80]  *Reese v. City of Atlanta*, 261 Ga. App. 761, 762 (2003) (stating same and affirming the trial court's grant of summary judgment in favor of the city).

[81] O.C.G.A. § 36-33-3; *McDay v. City of Atlanta,* 204 Ga. App. 621, 622(3) (1992).

to Plaintiff.   Accordingly, all such claims against the City of Atlanta must be dismissed.

## IV.   **CONCLUSION**

For the foregoing reasons, the City of Atlanta request that its Motion for Summary Judgment be GRANTED.

## **CERTIFICATION**

Counsel for Defendants certifies that this brief has been prepared with Times New Roman font, 14 point, and therefore it complies with the requirements of L.R. 5.1(C).

Respectfully submitted, this 4th day of April, 2012.

.
*//s// Tamara N. Baines*
**ROBERT N. GODFREY**
Chief Counsel
Georgia Bar No.  298550
**TAMARA N. BAINES**
Sr. Assistant City Attorney
Georgia Bar No. 032460
**LASHAWN W. TERRY**
Assistant City Attorney
Georgia Bar No. 702578

City of Atlanta Law Department
City Hall Tower, Suite 4100
68 Mitchell Street, SW
Atlanta, GA 30303
(404) 330-6947 (telephone)
(404) 546-8366 (facsimile)
tbaines@atlantaga.gov

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOHN ARNOLD, *et al*            )
   *Plaintiffs*              )
                               )
v.                               )        **CIVIL ACTION FILE**
                               )
                               )        **NO. 1:03-CV-0087-CAP**
RAYMOND S. BUNN, *et al*        )
   *Defendants*            )
                               )
          **Defendants.**        )

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2012, I electronically filed a copy of the

**CITY OF ATLANTA'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system.

 

*//s// Tamara N. Baines*
**TAMARA N. BAINES**
Sr. Assistant City Attorney
Georgia Bar No. 032460