IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOHN ARNOLD, et al.           )
    Plaintiffs                )
                              )      CIVIL ACTION FILE
v.                            )      NO.: 1:03-CV-0087-CAP
                              )
RAYMOND  S. BUNN, et al.      )
    Defendant                 )

## RAYMOND S. BUNN'S RENEWED MOTION FOR SUMMARY JUDGMENT

**COMES NOW**, Raymond S. Bunn ("Bunn") and files his Motion for

Summary Judgment pursuant to Fed. R. Civ. Pro. 56 and Local Rule 56.1, as

follows:

### STATEMENT OF THE CASE

Plaintiffs filed this action in Fulton County State Court.  Defendants

removed to this Court on January 10, 2003. (Doc. # 1).  Bunn first moved for

summary judgment on March 22, 2005. (Doc. # 45).  The Court entered an order

dismissing without prejudice Bunn's motion as moot. (Doc. # 54).

On May 24, 2007, the case was administratively closed pending resolution

of criminal charges against Bunn.  (Doc. # 73).  On December 1, 2010, the Court

entered an order granting Plaintiffs' Motion to Reopen the Case.  (Doc. # 80).

After several extensions, discovery closed on March 30, 2012. (Doc. # 109).

Bunn requested an extension of time to file his <u>Renewed Motion for Summary Judgment</u> through and including May 4, 2012.  (Doc. # 128).  The Court granted Bunn's request and Bunn now timely files his <u>Renewed Motion for Summary Judgment</u>.[1]

## ARGUMENT AND CITATION OF AUTHORITY

A.    THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is "no *genuine* issue as to any *material* fact. " Fed. R. Civ. P. 56(c) (emphasis added).  A *genuine* issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson et al v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505 (1986) (emphasis added).  This case involves claims against Bunn for acts he took as a public official; therefore, Bunn asserts the defenses of qualified immunity (federal civil rights claims) and official immunity (state law claims).

Qualified immunity [and its state law correlate – official immunity] is "an immunity from suit rather than a mere defense to liability . . . . As a result, [the Supreme Court] repeatedly [has] stressed the importance of resolving immunity

---

[1] In accordance with Local Rule 56.1, Bunn has separately filed his <u>Statement of Material Facts To Which There Remains No Genuine Issue To Be Tried</u>, together with supporting evidentiary materials.

questions at the earliest possible stage in litigation." *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151 (2001) (internal punctuation, citations omitted); *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985); see also, *Cameron v. Lang*, 274 Ga. 122, 124 (1) (549 SE2d 341) (2001)("Like sovereign immunity, official immunity is "an entitlement not to stand trial rather than a mere defense to liability.").

To give meaning to the significant objective of qualified and official immunity **– prompt pre-trial resolution -**  the Supreme Court has admonished that while "facts must be viewed in the light most favorable to the nonmoving party," summary judgment should only be denied "if there is a 'genuine' dispute as to those facts.  The mere existence of some **alleged factual dispute between the parties** will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769 (2007)(emphasis added).

B.    COLLATERAL ESTOPPEL BARS PLAINTIFFS' CLAIMS AGAINST BUNN

On December 9, 2005, Bunn was indicted for murder and other charges arising from the death of Corey Ward on July 14, 2002.  *Bunn v. State*, 284 Ga. 410, 667 S.E.2d 605 (2008); see also Bunn Exhibit O.  Bunn filed a <u>Motion for Immunity From Prosecution Under O.C.G.A. 16-3-24.2</u>  "on the basis that he reasonably believed his actions in shooting Ward were necessary to prevent imminent death

or great bodily injury to himself or his partner pursuant to O.C.G.A. § 16-3-21(a)." *State v. Bunn*, 288 Ga. 20, 20, 701 S.E.2d 138 (2010).

The criminal court held an evidentiary hearing on Bunn's motion. Fifteen witnesses, including at least six experts, testified during the hearing. Bunn Ex. Q. The parties introduced more than 5,000 pages of exhibits, including four depositions taken by Plaintiffs' counsel in this matter. Bunn Ex. Q. The parties in the criminal matter had a full and fair opportunity to litigate the fact issues relevant to Bunn's immunity claim.

The first criminal trial judge applied the wrong standard of review and denied Bunn's <u>Motion</u>. Bunn appealed and the Supreme Court reversed and remanded. *Bunn v. State*, 284 Ga. 410, 413 667 S.E.2d 605 (2008). A new trial judge adopted his predecessor's findings of fact, reviewed them under a preponderance of the evidence standard, and found that Bunn

> **reasonably would have held the perception that the driver of the vehicle [Ward] would not stop and that he posed an imminent threat to his life and physical well-being. The only effective means [Bunn] had to attempt to stop or pre-empt the danger was his weapon. [Bunn] fired his service weapon in his own self-defense at the driver and was justified in doing so.**

Bunn Ex. P; <u>see also</u>, *State v. Bunn*, 288 Ga. at 21-22. This Court should find that the plaintiffs' cannot re-litigate the fact issues determined in Bunn's criminal prosecution.

Page 4 of 26

> Collateral estoppel is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

*Ashe v. Swenson*, 397 U.S. 436, 443, 90 S. CT. 1189, 1194, 25 L. ED. 2D 469 (1970).

Collateral estoppel applies to actions brought pursuant to 42 U.S.C. § 1983. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411 (1980). The Court "must look to the operation of [Georgia's] law of collateral estoppel" to determine whether it should apply in this matter. See *Webb v. Ethridge*, 849 F.2d 546, 549 (11th Cir. 1988)(refusing to apply collateral estoppel to Recorder's Court determination of probable cause). Georgia retains the old "mutuality rule of collateral estoppel and a "restrictive" definition of privity. *Id.* Thus, collateral estoppel applies in Georgia when "an issue . . . has previously been litigated and adjudicated on the merits in another action between the same parties or their privies." *In re T.M.G.*, 275 Ga. 543, 544, 570 S.E.2d 327 (2002).

Bunn acknowledges that, in the typical case, issue preclusion is asserted by a civil defendant against a plaintiff based upon facts determined in a criminal prosecution of the plaintiff. See e.g. *Webb, supra*; *Few v. Cobb County, Georgia*, 147 Fed. Appx. 69 (2005)(declining to give preclusive effect to guilty plea on Obstruction charge); *Willingham v. Loughnon*, 261 F.3d 1111, 1178 (11th Cir. 2001),

vacated and remanded on other grounds, 537 U.S. 801, 123 S.Ct. 68, re-affirmed

321 F.3d 1299, 1301 (11th Cir. 2003)(giving preclusive effect to fact determinations

implicit in criminal jury verdict).  Thus, in the typical case, the plaintiff has been

a party to both proceedings and was presumably given ample opportunity (in

the criminal case) to litigate issues sought to be precluded in the subsequent civil

rights action.  *Allen*, 449 U.S. 419-20.

Bunn presents the mirror image case.  Bunn was the criminal defendant. In

that proceeding, he successfully met his burden of proving by a preponderance

of the evidence that he was entitled to immunity from criminal prosecution.

Now Bunn is the civil defendant.  He asserts qualified and official immunity;

defenses that turn on exactly the same issue of fact conclusively determined in

the criminal proceeding: *his use of deadly force was objectively reasonable*.  Bunn

respectfully submits that this case presents an important issue of first impression:

Whether a police officer in Georgia may assert collateral estoppel to prevent re-

litigation of the central issue in an officer-involved shooting when that officer

established by a preponderance of the evidence that he was entitled to immunity

under O.C.G.A. § 16-13-24.2.

Bunn submits that collateral estoppel applies in this unique circumstance

for three reasons.  Sufficient privity exists between the State and the plaintiffs

(the victim's family) to meet even Georgia's restrictive definition of privity. Sufficient safeguards exist in the underlying criminal proceeding to comport with due process requirements. Application of collateral estoppel in this instance serves the underlying purpose behind qualified immunity doctrine.

    1.    <u>Privity Exists Between District Attorneys and Crime Victims</u>

The Plaintiffs in this civil action are John Arnold, Corey Ward's father, and Monesia Youngblood, Corey Ward's mother.  <u>See</u>  <u>*Notice of Removal*</u>, Doc. # 1. Under Georgia law, the Plaintiffs were defined as "victims" with regard to the criminal prosecution of Bunn in the shooting death of their son, Corey Ward. O.C.G.A. § 17-17-3(11)(B). In accordance with Georgia law, the Fulton County District Attorney office was responsible for pursuing criminal charges against Raymond Bunn. O.C.G.A. § 15-18-6(1).

District Attorney Paul Howard testified that his family had a personal connection with the plaintiffs' family. Bunn Ex. Q.  Mr. Howard also testified that his office undertook an extensive and expensive three year investigation before finally indicting Mr. Bunn.  Bunn Ex. Q.  Mr. Howard's office hired and fired multiple experts in various fields until they finally found someone willing to testify that Bunn's shooting of Corey Ward was unlawful.  Bunn Ex. Q. During the evidentiary hearing on Bunn's motion, the State relied in part upon

testimony secured by the plaintiffs in this civil action.  Bunn Ex. Q.

"A privy has generally been defined as one who is represented at trial and who is in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." *Butler v. Turner*, 274 Ga. 566, 568, 555 S.E.2d 427, 430 (2001). "Before privity can be established, the interests of the party must fully 'represent' the interests of the privy and be fully congruent with those interests." *Pinkard v. Morris,* 215 Ga.App. 297, 298(1), 450 S.E.2d 330 (1994).  Bunn submits that Georgia prosecutors are privies of crime victims during the course of a criminal prosecution.

Georgia prosecutors have a statutory duty to "assist victims . . . of crimes through the complexities of the criminal justice system and ensure the victims of crimes are apprised of the rights afforded them under the law."  O.C.G.A. § 15-18-6(11).  Those duties, at a minimum, include meeting those obligations set forth in Georgia's Crime Victims' Bill of Rights. O.C.G.A. § 17-17-1 et seq.[2]

Georgia prosecutors are also responsible for advising and representing crime victims in recovering restitution from criminal defendants.  O.C.G.A. § 15-18-6(10) & (11).  Restitution means "any property, lump sum, or periodic

---

[2] In the event of the death of a crime victim, an immediate family member is defined as a "victim" under Georgia law.  O.C.G.A. § 17-17-3(11)(B).

payment ordered to be paid to any victim." O.C.G.A. § 17-14-2(7).  The amount

of restitution [cannot be more than] "the victim's damages."  O.C.G.A. § 17-14-9.

In the context of restitution, Georgia law defines damages as,

> All damages which a victim could recover against an offender in a
> civil action, including a wrongful death action, based on the same
> acts or acts for which the offender is sentenced, except punitive
> damages and damages for pain and suffering, mental anguish or
> loss of consortium.

O.C.G.A. § 17-14-2(2).  An order of restitution "shall not bar any civil action

against the offender;" but restitution payments "may be a set off against any

judgment awarded to the victim in a civil action."  O.C.G.A. § 17-14-11.

A Georgia prosecutor thus fully represents the interests of a crime victim

in a criminal prosecution. Georgia prosecutors and crime victims share the same

underlying concerns:  justice and punishment.   In meeting that interest, Georgia

prosecutors must also assist crime victims in securing monetary compensation –

restitution – for injuries caused by a criminal defendant.  Restitution admittedly

excludes compensatory and punitive damages, but nonetheless, this right (of the

victim) and obligation (of the prosecutor) demonstrates how prosecutors

represent victims' interests.

Crime victims who may become civil rights plaintiffs stand to benefit from

the State's significant resources in pursuing criminal prosecution of a particular

public official.  When questioned about the enormous sums spent on experts in this case, Paul Howard observed, "I think in the death of a young person and when a policeman is accused, I thought the money was well worth it, whatever it was." Bunn Ex. Q, p. 652.  Mr. Howard later testified that the State spent at least "$30,000.00 for the analysis and the animation" prepared by an expert engineer and used by the State to secure Bunn's indictment from a grand jury. Bunn Ex. Q, p. 673.  This not insignificant financial benefit further demonstrates an alignment of interests between crime victims (turned civil right plaintiffs) and Georgia prosecutors.

>    2.    <u>Due Process Considerations Are Satisfied By The Significant Safeguards Built Into the Underlying Criminal Proceeding</u>

The due process clauses of the Fifth and Fourteenth Amendments require precluded parties to have at least one full and fair opportunity to litigate an issue before being bound by a prior determination of that issue. *See e.g., Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 327 n. 7, 99 S.Ct. 645 (1979) ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard.").  Plaintiffs should not be considered as a "precluded party," but as privies to Georgia prosecutors.  With or without that finding, however, the Court should still give

preclusive effect to the fact determinations made following a lengthy evidentiary hearing on Bunn's immunity claim.

The issue at stake in the criminal immunity hearing was identical to the issue at stake in this case.  Georgia's criminal immunity statute provides, in pertinent part,  "[a] person who uses threats or force in accordance with Code Section 16-3-21 . . . shall be immune from criminal prosecution therefor . . . "  O.C.G.A. § 16-3-21, in pertinent part, provides, "[a] person is justified in using [deadly] force only if he reasonably believes that such force is necessary to prevent death or great bodily injury to himself or a third person . . . "

Construing proper application of these provisions in the underlying criminal prosecution, the Georgia Supreme Court explained, "[a]s a potential bar to criminal proceedings which must be determined prior to a trial, immunity represents a far greater right than any encompassed by an affirmative defense, which must be asserted during trial, but cannot stop a trial altogether."  *Bunn v. State*, 284 Ga. 410, 413 (2008).  The Supreme Court thus concluded that, "to avoid trial, a defendant bears the burden of showing he is entitled to immunity . . . by a preponderance of the evidence."[3]  *Id.*

---

[3] Just as with qualified immunity, a defendant can still pursue immunity as an affirmative defense at trial in the event that the criminal court declines to grant immunity prior to trial. *Id.*

Insofar as the issue at stake here is concerned – *objective reasonableness of Bunn's use of deadly force* – the State of Georgia will always be committed to vigorously opposing a defendant-officer's immunity claim.  The defendant-officer, meanwhile, bears the burden of production and proof by a preponderance of the evidence.  These procedural safeguards are plainly sufficient to satisfy due process concerns, even if the Court finds no privity between Georgia prosecutors and crime victims.

Such a finding would be entirely consistent with the substance of the Supreme Court's decision in *Allen v. McCurry, supra,* decided just a year after *Parklane Hosiery Co.*  Holding that due process considerations did not prevent application of collateral estoppel in § 1983 actions, the Court explained that,

> [t]here is . . . no reason to believe that Congress intended to provide a person claiming a federal  right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all [a criminal proceeding].

*Allen v. McCurry,* 449 U.S. at 104.  Given these significant procedural safeguards *Allen* dictates that the Plaintiffs should not be afforded an "unrestricted opportunity to relitigate" objective reasonableness in federal court.

3.      Use of Collateral Estoppel Serves The Underlying Purpose Of
        Qualified Immunity

Qualified immunity [and its state law correlate – official immunity] is "an

immunity from suit rather than a mere defense to liability."  It should be

resolved "at the earliest possible stage in litigation."  *Saucier, supra.*  Applying

collateral estoppel in this instance furthers this objective and ensures that this

baseless action ends right now, at the summary judgment stage.

C.    BUNN'S USE OF DEADLY FORCE DID NOT VIOLATE THE FOURTH AMENDMENT

Plaintiffs' claims against Bunn - a police officer - are properly analyzed

under the Fourth Amendment's "reasonableness" standard.  *Graham v. Connor*,

490 U.S. 386 (1989); *Tennessee v. Garner*, 471 U.S. 1, 11-12, 105 S.Ct. 1694 (1985).

Whether the use of force is reasonable "requires a careful balancing of the nature

and quality of the intrusion on the individual's Fourth Amendment interests

against the countervailing governmental interests at stake." *Graham*, 490 U.S. at

396.

"In determining the reasonableness of the force applied, we look at the fact

pattern from the perspective of a reasonable officer on the scene with knowledge

of the attendant circumstances and facts, and balance the risk of bodily harm to

the suspect against the gravity of the threat the officer sought to eliminate."

*Terrell v. Smith*, 668 F.3d 1244, 1250-51 (11th Cir. 2012)  "The `reasonableness'

inquiry is an objective one:  the question is whether the officer's actions are

objectively reasonable in light of the facts and circumstances confronting him,

without regard to his underlying intent or motivation."   <u>*Crosby v. Monroe County*</u>,

394 F.3d 1328, 1333 (11th Cir. 2004).

> The 'reasonableness' of a particular use of force must be judged
> from the perspective of a reasonable officer on the scene, rather than
> with the 20/20 vision of hindsight . . . The calculus of reasonableness
> must embody allowance for the fact that police officers are often
> forced to make split-second judgments – in circumstances that are
> tense, uncertain, and rapidly evolving – about the amount of force
> that is necessary in a particular situation.

<u>*Troupe v. Sarasota County*</u>, 419 F.3d 1160, 1168 (11th Cir. 2005); <u>citing</u>, *Graham,* 490

U.S. at 396-97; <u>see also</u>, *Terrell v. Smith*, 668 F.3d at 1251.  At the summary

judgment stage, "[a]lthough the facts must be taken in the light most favorable to

the plaintiffs, the determination of reasonableness must [still] be made from the

perspective of the officer."  <u>*St George*</u>, 285 F. 3d at 1337.

The Eleventh Circuit has "distilled" three key factors from *Tennessee v.*

*Garner,* 471 U.S. 1, 105 S.Ct. 1694 (1985) concerning the reasonableness of the use

of deadly force.  *Terrell*, 668 F.3d at 1251. An officer may use deadly force to stop

a fleeing felony suspect when the officer:

1.  has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm;
2.  reasonably believes that the use of deadly force was necessary to prevent escape; and
3.  has given some warning about the possible use of deadly force, if feasible.

*Id.* at 1329–30 (emphasis removed). These factors may (or may not) be relevant in assessing reasonableness; "in the end [the court] must still slosh [its] way through the factbound morass of 'reasonableness.'" *Scott v. Harris,* 550 U.S. 372, 383, 127 S.Ct. 1769 (2007).

In <u>Pace v. Capobianco</u>, 283 F.3d 1275, 1280 (11th Cir. 2002), the Eleventh Circuit affirmed summary judgment in favor of the defendant-officers who shot a suspect who had stopped his vehicle after a high-speed chase, even though the suspect had neither tried to run over nor aimed the vehicle at officers. The Eleventh Circuit analyzed the facts under a Fourth Amendment reasonableness standard and concluded that the Fourth Amendment did not rule out the use of deadly force. <u>Pace</u>, 283 F.3d at 1282.

Bunn too acted reasonably given the "tense, uncertain, and rapidly evolving" circumstances. Bunn and Mulkey heard glass shatter and saw a suspect emerging from a smashed-in window of a car. As law enforcement

officials, they had every right (if not a duty) to investigate a felony-in-progress. O.C.G.A. § 17-4-20(a). They stopped their car, got out and began to chase the suspect on foot. They saw the suspect jump into a waiting SUV, occupied by other persons. Bunn and Mulkey had probable cause to believe a crime had occurred in their presence; they had a duty to stop the SUV and investigate further. *Id.*

They identified themselves as police officers and shouted commands to the driver of the SUV. The driver did not obey their commands to "stop;" he began driving the SUV in the officers' direction. Bunn retreated back to his police vehicle. The SUV stopped. Bunn believed the driver was ready to comply with police commands and presence. Bunn started to approach the SUV to extract, investigate and likely arrest the driver, at least, for misdemeanor obstruction (failing to obey lawful commands).

But as Bunn left his position behind the police vehicle, the driver accelerated the SUV and drove at Bunn. The driver was not complying at all and now Bunn found himself in "no man's land," facing an oncoming vehicle filled with occupants bent on escaping police custody. Ignoring lawful commands, the driver of the SUV placed Bunn in imminent danger of receiving grave bodily injury. Bunn made a split-second, life or death decision. He fired his weapon

two times as he tried to move out of the way of the oncoming SUV.

The law existing in Georgia at the time of this incident instructed that a car driven in a threatening manner can be considered a deadly weapon. *Webb v. State,* 256 Ga.App. 653, 654, 569 S.Ed.2d 596 (2002) ( "[O]ne who aims a motor vehicle at another person may be convicted of aggravated assault regardless of whether the victim sustained any injuries or was even touched by the vehicle."). Furthermore, under Georgia law, a law enforcement officer is justified in using deadly force to prevent death or great injury to himself/herself or to third parties. *See* O.C.G.A. §§ 16–3–23 and 17–4–20.

In *Robinson v. Arrugueta*, 415 F.3d 1252, 1255-56 (11th Cir. 2005), the defendant-officer was standing in a narrow space between two vehicles. One suspect was disobeying his orders to put his hands up when the suspect's vehicle suddenly began moving forward.  The defendant-officer had to make a split-second decision of whether he could escape before he got crushed. At the most, the defendant-officer had 2.72 seconds to react to what he perceived as a threat of serious physical harm from the driver of the vehicle.  *Id*. The Eleventh Circuit explained that, "[e]ven if in hindsight the facts show that [the defendant-officer] perhaps could have escaped unharmed, we conclude that a reasonable officer could have perceived that [the suspect] was using the Escort as a deadly weapon.

Page 17 of 26

[The defendant-officer] had probable cause to believe that [the suspect] posed a threat of serious physical harm. *Id.* at 1256; see also, *McCullough v. Antolini,* 559 F.3d 1201, 1202 (11th Cir.2009).

Most recently, in <u>*Terrell v. Smith*</u>, 668 F.3d 1244 (11th Cir. 2012), the Eleventh Circuit reversed a denial of summary judgment on the basis of qualified immunity. An officer tried to stop a suspect from driving away from a traffic stop. He got stuck between the open car door and the car itself, and the suspect was driving away. The suspect failed to comply with commands to stop, so the officer shot the suspect. The Eleventh Circuit found that the officer's use of deadly force did not violate the suspect's Fourth Amendment rights. <u>*Id.*</u> at 1255.

Bunn did not violate the Fourth Amendment's objective reasonableness standard when he made the split second decision to use deadly force to stop an oncoming vehicle that posed an obvious risk of serious bodily injury. The Court should grant summary judgment.

D.   BUNN IS ENTITLED TO QUALIFIED IMMUNITY

As the Supreme Court reiterated in *Pearson v. Callahan*, 555 U.S. ---, 129 S.Ct. 808, 815 (2009), qualified immunity "balances two important interests, the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when

they perform their duties reasonably." The balance of interests here weighs insurmountably in favor of Bunn and, accordingly, the Court must grant summary judgment.

A public official asserting qualified immunity must prove that he was acting within his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). Bunn has done so. The burden shifts to the plaintiffs, who must prevail on both prongs of the Supreme Court's qualified immunity analysis. Under *Pearson, supra,* the Court is no longer required to address the prongs in order.

If the Court elects to consider the first prong, the Court should consider whether the Plaintiffs allegations, if true, state a constitutional violation. Bunn has fully briefed this issue, *infra*, and does not do so again here. Besides Bunn submits that the Court should not consider the first prong at all, as it is readily apparent that Plaintiffs' cannot establish that pre-existing law gave Bunn fair warning that – on July 14, 2002 – his use of deadly force violated the Fourth Amendment.

"Qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted." <u>Broussau v. Haugen</u>, 533 U.S. 194,

198, 125 S.Ct. 596 (2004)(citations omitted). "Reasonableness is judged against the backdrop of the law at the time of the conduct." *Id.* "If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability, or, indeed even the burdens of litigation." *Id.* "It is important to emphasize that this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*

The general tests set out in *Graham* and *Garner* do not provide fair warning to an officer like Bunn. "*Graham* and Garner, following the lead of the Fourth Amendment's text, are cast at a high level of generality" and, accordingly, can only provide "fair warning" in an "obvious" case. *Broussau*, 543 U.S. at 199. This is by no means an obvious case.

No materially similar case gave Bunn notice; if anything, pre-existing law established that Bunn's actions fell squarely within the "hazy boarders between excessive and acceptable force." *Saucier v. Katz*, 533 U.S. at 206. In *Broussau*, the Supreme Court held that, assuming without deciding that the officer's use of deadly force violated the Fourth Amendment, the officer did not have fair warning under pre-existing law. *Broussau*, 543 U.S. at 201. The defendant-officer in *Broussau* shot an unarmed suspect after a foot chase. The suspect entered a

vehicle and, despite repeated warnings, refused to turn the vehicle off.  The suspect put the vehicle in gear and backed up away from the officer, who shot him through the windshield.  *Id.* at 196-197.  Although several prior cases dealt with officers who shot a "disturbed felon, set on avoiding capture through vehicular flight," the Court found that those decisions were not sufficiently similar to put the defendant-officer on notice that shooting at the suspect would violate his Fourth Amendment rights.  *Id.* at 199-200.  *See also*, *Long v. Slaton*, 508 F.3d 576, 584 (11ᵗʰ Cir. 2007); *Terrell v. Smith*, *supra* at 1256.(finding that there was no pre-existing law in 2007 giving fair warning to the defendant-officer).

Several Eleventh Circuit decisions involving incidents prior or during the year of the Ward shooting - 2002 – support that Bunn's actions did not violate the Fourth Amendment; or, at a bare minimum, that the law did not clearly establish that his conduct would later be deemed to have violated the Constitution.  In *Pace v. Capobianco,* 283 F. 3d 1275 (11th Cir. 2002), the Eleventh Circuit found that shooting at a vehicle by police after a chase was not unreasonable under the Fourth Amendment.  Furthermore, the Eleventh Circuit found that there was no pre-existing case in 2002 demonstrating a clearly established rule prohibiting officers from using deadly force under the circumstances the officers faced at that time.  *Id.* at 1283; see also *Robinson v. Arrugueta*, 415 F.3d 1252, 1255-56 (11th Cir.

2005)(involving a police shooting occurring in Georgia in 2002).  The Court should grant summary judgment on qualified immunity grounds.

E.    BUNN IS ENTITLED TO OFFICIAL IMMUNITY

In addition to their federal civil rights claims, Plaintiffs allege several state law tort claims including, Assault and Battery; Negligence and Wrongful Death. Bunn is entitled to summary judgment on official immunity on all of these claims.

The doctrine of official immunity provides that "while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are willful, wanton, or outside the scope of his authority."  *Gilbert*, 264 Ga. at 752 (citation omitted). A police officer's decision to use deadly force in the line of duty is discretionary, not ministerial. *Kidd v. Coates*, 271 Ga. 33 (1999)("Firing a gun at a person while executing a no-knock search warrant at a person's home is a discretionary function").  As Bunn was acting within his discretionary authority as a law enforcement officer, he is entitled to official immunity unless Plaintiffs establish that he acted with actual malice or actual intent to cause injury.

Plainly then, alleging mere negligence, as Plaintiffs' do in Counts 7 and 8 of their Complaint, is insufficient to overcome official immunity.  *See e.g.* Adams v. Hazelwood, 271 Ga. 414, 414, 520 S.E.2d 896, 898 (1999).  Bunn is entitled to

summary judgment on these claims.

Even on Plaintiffs' remaining claims, it is apparent that Bunn did not act with actual malice or intent to cause injury. "Actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact." *Selvy v. Morrison*, 292 Ga. App. 702, 704, 665 S.E.2d 401, 404-05 (2008). "Actual malice does not include implied malice, or the reckless disregard for the rights and safety of others." *Id.* at 704. "A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiff.'"*Id.* Thus, "[e]vidence demonstrating frustration, irritation, and possibly even anger is not sufficient to penetrate official immunity, nor is proof of ill will, unless the ill will is combined with the intent to do something wrongful or illegal.'" *Id.* at 706.

An "actual intent to cause injury" means more than actual intent to do the act that caused the harm; it means an actual intent to harm the plaintiff. *Kidd v. Coates,* 271 Ga. 33 (1999). In the police shooting context, the Georgia Supreme Court explained that "[b]ecause an officer does not lose the right to defend himself when he acts in his official capacity, we hold that an injurious work-related act committed by an officer, but justified by self-defense, comes within the scope of official immunity." *Id.* at 34.

In the police shooting context, courts must distinguish between the intention to do a wrongful act, i.e. kill a suspect; and the intention to do an act which causes injury, i.e. shoot at a suspect to stop a threat.  If the officer reasonably perceives a threat – even if he later proves to have been mistaken – official immunity shields the officer from liability.  If no reasonable officer would have made the same mistake; that is, the officer's use of deadly force was plainly unreasonable, official immunity will not protect the officer from liability.

There is no evidence that Bunn acted with "actual malice" or "actual intent to injure" Ward.  Bunn did not "intend to commit an unlawful act;" but rather, he intended to stop the threat he perceived from the Tahoe coming at him.  Plaintiffs can point to no evidence that Bunn intended to kill Ward when he fired at the Tahoe from in front of the Tahoe just off the driver's side headlight.  Even if the Plaintiffs had succeeded in establishing evidence that Bunn violated state law or even department policy when he chose to fire at the Tahoe, those violations would be insufficient to prove "actual malice." _Cameron v. Lang_, _supra_; _Phillips v. Hanse_, _supra_.  Nor can Plaintiffs cannot overcome official immunity simply by showing some disputed issue of material fact as to whether Bunn's actions were objectively reasonable.  In _Tittle v.Corso_, every fact relied upon by the plaintiff to

prove actual malice was in dispute.  *Tittle v. Corso*, 256 Ga. App. 859

(2002)(emphasis added).

Bunn made a split-second decision under tense, rapidly evolving

circumstances.  His conduct was reasonable and entirely justified under Georgia

law.  O.C.G.A. § 16-13-21(a).  Bunn is entitled to official immunity.


Respectfully submitted,

/s/William J. Atkins
William J. Atkins
State Bar No. 027060
bill@atkinsfife.com


ATKINS & FIFE, LLC
6400 Powers Ferry Road, Ste.  355
Atlanta, Georgia 30339
Tel. 404.969.4130
www.atkinsfife.com


Attorneys for Defendant Raymond Bunn

**IN THE UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| JOHN ARNOLD et al | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION NO: |
| | : | 1:03-CV-0087-CAP |
| vs. | : | |
| | : | |
| RAYMOND S. BUNN, et al, | : | |
| | : | |
| Defendants. | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **RAYMOND S. BUNN'S RENEWED MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification to the following:

Shean D. Williams                Robert N. Godfrey
sdw@sistrunklaw.com           rgodfrey@atlantaga.gov

Tamara Baines
tbaines@atlantaga.gov

This <u>4</u><sup>th</sup> Day of <u>May</u>, 2012.

/s/William J. Atkins
William J. Atkins
State Bar No. <u>027060</u>

ATKINS & FIFE, LLC
6400 Powers Ferry Road, Ste.  355
Atlanta, Georgia 30339
Tel. 404.969.4130
www.atkinsfife.com