## IN THE UNITED STATE DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JOHN ARNOLD and MONESIA    :
YOUNGBLOOD, Individually and as   :
Co-Administrator of the Estate of    :
COREY WARD, Deceased         :
                                 :
Plaintiffs,                    :    CIVIL ACTION NO:
                                 :    1:03-CV-0087-CAP
vs.                       :
                                 :
RAYMOND S. BUNN, individually and :
in his Official Capacity as a Police Officer :
of the City of Atlanta Police Department; :
et. al                    :
                                 :

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT BUNN'S MOTION FOR SUMMARY JUDGMENT

COME NOW, PLAINTIFFS John Arnold and Monesia Youngblood, and hereby files and serves this Response in Opposition to Defendant Raymond Bunn's Motion for Summary Judgment, respectfully showing the Court as follows:

### INTRODUCTION

On July 13, 2002, Defendant Bunn fired two gunshots at the head of Corey Ward without legal justification, causing the unnecessary death of an 18-year-old man.   In an effort to escape responsibility for Corey Ward's death, Defendant Raymond Bunn ("Bunn") moved for summary judgment to dismiss Plaintiffs'

federal civil rights claims and state claims for wrongful death of Corey Ward. However, the overwhelming evidence and Defendant Bunn's own statements prove that Bunn not only violated Corey Ward's Fourth Amendment Rights but also acted unreasonable when he fired two gunshots at a passing vehicle. Furthermore, the overwhelming physical evidence and Plaintiffs' experts show that when Bunn shot Corey Ward; he posed no danger to Defendant Bunn or anyone else. Based on the physical evidence from the scene, the affidavit of Rodriquez Brown, expert testimony of Plaintiffs' experts, and deposition testimony of the involved officers, it is clear that Ward's vehicle did not pose a threat to any officer at the time of the shooting, Bunn's use of deadly force was excessive and unreasonable, giving rise to liability for Fourth Amendment violations under 42 U.S.C. § 1983, as well as for negligence for the violation of ministerial duties. As a result, Defendant Bunn's Motion for Summary Judgment should be denied.

## SUMMARY OF EVIDENCE THAT CREATES GENIUE ISSUES OF WHETHER BUNN USED EXCESSIVE FORCE.

**I.   THE SWORN TESTIMONY OF BUNN AND MULKEY AS WELL AS THE AFFIDAVIT OF RODRIQUEZ BROWN DEMONSTRATE THAT NEITHER COREY WARD NOR THE TAHOE POSED ANY DANGER TO BUNN OR ANYONE ELSE.**

Corey Ward was an 18-year-old young man with no history of violence, no criminal history, and had never been arrested. (See ¶ 20 of Plaintiffs' Response to

Defendant Bunn's Interrogatories).  On July 14, 2002, Defendant Bunn fired two gunshots that ultimately killed Corey Ward.  (Bunn dep., pp. 63, 134).  At the time he was shot, Corey Ward was driving his mother's Tahoe SUV with five other passengers, including Jason Heath, Rodriquez Brown, Jason Smith, Melvin Heath, and Jamal Smith.  (Affidavit of Brown attached hereto as Exhibit "A").  At no time on July 13, 2002 did Corey Ward break into a vehicle or commit a crime.  (Bunn dep., p. 70; Affidavit of Brown attached as Exhibit "A").  Neither Corey Ward nor any of the passengers in the Tahoe SUV were armed with a gun or any kind of weapon at any time throughout the subject incident.  (Bunn dep., p. 88; Affidavit of Brown attached as Exhibit "A").

On the early morning in question, Defendant Bunn and Officer Mulkey were not pursuing Corey Ward in connection with any crime that night.  (Bunn dep., p. 85).  Defendant Bunn and Officer Mulkey testified that they were pursuing Jamal Smith, who they believed had broken the window of a Buick National in the parking lot, not Corey Ward.   (Bunn dep., p. 85).  Despite committing no crime, having no weapon, and posing no threat, Defendant Bunn fired two fatal shots at the head of Corey Ward as he was driving the Tahoe SUV out of a parking lot located in the Buckhead area of Atlanta.  (Affidavit of Brown attached as Exhibit "A"; Bunn dep., p. 63).

At the time of the incident in question, Defendant Bunn and Officer Mulkey were patrolling in the Buckhead area in an "unmarked vehicle" and in "plain clothes". (See Exhibit "18" attached to the deposition of Bunn). After hearing broken glass, Defendant Bunn and Officer Mulkey drove their unmarked vehicle into a parking lot. (Bunn dep., pp. 69-71). The unmarked vehicle had nothing identifying it as an Atlanta Police Department ("APD") vehicle. (See photograph of Unmarked Vehicle attached hereto as Exhibit "B").

Wearing dark shirts and pants, Defendant Bunn got out of the unmarked vehicle and began to approach the SUV Tahoe that was parked in a space in the parking lot. (Bunn dep., p. 17). Defendant Bunn testified that he was wearing dark blue jeans and a black T-Shirt with the APD emblem on the back of the black T-Shirt. (Bunn dep., pp. 82-83; See Exhibit "23" attached to deposition of Bunn). Defendant Bunn admits that Corey Ward and the passengers were not able to see the ADP letters on his black T-Shirt as he approached the Tahoe. (Bunn dep., pp. 82-83).

As Bunn approached the Tahoe SUV, Corey Ward was backing his vehicle out a space in the parking lot. During this time, there were no other individuals in or near the parking lot other than Defendant Bunn and Officer Mulkey. (Affidavit of Brown attached as Exhibit "A"). After backing his vehicle out the space, Corey

Ward began driving forward in an effort to exit the parking lot. (Affidavit of Brown attached as Exhibit "A"). At no time did Corey Ward gun the acceleration of the SUV or drive the SUV at an high rate of speed in the direction of the Defendant Bunn or Officer Mulkey. (Affidavit of Brown attached as Exhibit "A"). At no time did Corey Ward try to run Defendant Bunn or Officer Mulkey over with the Tahoe SUV. (Affidavit of Brown attached as Exhibit "A"). At no time did Corey Ward aim the Tahoe SUV at Defendant Bunn or Officer Mulkey. (Affidavit of Brown attached as Exhibit "A").

As Corey Ward attempted to drive out of the parking lot, Defendant Bunn testified that he retreated to the driver side of the unmarked police vehicle. (See photograph of unmarked police vehicle attached hereto as Exhibit "B"; Bunn dep., pp. 93-94). Because he was behind the police vehicle and out of the path of the Tahoe SUV, Defendant Bunn testified that he felt safe and was not in fear of his life. (Bunn dep., pp. 103, 118). Although he was in a safe position and did not fear for his life, Defendant Bunn made the decision to move from the driver side of the police vehicle to the passenger side of the police vehicle. (Bunn dep., p. 139; See photograph of unmarked vehicle attached hereto as Exhibit "B"). Bunn testified that he moved from behind the driver side of the unmarked police vehicle in an effort to extract the occupants from the SUV and arrest them. (Bunn dep.,

pp. 139; photograph of unmarked vehicle attached hereto as Exhibit "B").   This was in direct violation Atlanta Police Department's "Felony Stop" policy. (APD Felony Stop Policy attached Exhibit "C").

As he attempted to move from the driver side of the unmarked police vehicle to the passenger side, Defendant Bunn ran toward the driver side of the Tahoe SUV as it was attempting to the leave the parking lot.   (Affidavit of Brown attached as Exhibit "A"; Bunn dep., p. 117; Exhibits "12, 13, 14" attached to the deposition of Bunn).   Immediately prior to and at the time of the shooting, Defendant Bunn was located to the left of the Tahoe SUV on the driver's side. (Affidavit of Brown attached as Exhibit "A"; Gardner dep., p. 150).   Neither Bunn, Mulkey or any other person were standing in the direct path of the Tahoe SUV as Mr. Ward was attempting to leave the parking lot.   (Affidavit of Brown attached as Exhibit "A"; Gardner dep., p. 150).   Corey Ward did not attempt run over any person, or injure any person in any way with his vehicle at any time, including Bunn and Mulkey. (Affidavit of Brown attached as Exhibit "A").   Although Corey Ward's vehicle did go forward before the shooting began, neither Bunn or Mulkey were in front of the SUV at that time, and Ward did not accelerate the vehicle at a high rate of speed toward Bunn or Mulkey.   (Affidavit of Brown attached as Exhibit "A").   At no time did the Tahoe SUV appear to be a threat or danger to

Defendant Bunn, Officer Mulkey, or anyone else. (Affidavit of Brown attached as Exhibit "A"; Ross Gardner dep., pp. 150-152). Despite Corey Ward posing no threat or danger to Bunn or any person, Defendant Bunn fired two fatal shots at the head of Corey Ward as the Tahoe was driving away from him. (Affidavit of Brown attached as Exhibit "A"; Bunn dep., p. 63; Autopsy Report of Corey Ward (attached as Exhibit "J"). Bunn's use of deadly force was in direct violation of APD's Firearm Policy. (APD Firearm Policy attached as Exhibit "D").

As a result of being shot in the head, Corey Ward died instantly and did not have any control over the vehicle. (Gardner dep., p. 116-117). Because Corey Ward was not driving at a high rate of speed, the Tahoe SUV came to a stop on its own at the end of the parking lot. (Gardner dep., p. 117; Photograph of the Scene attached as Exhibit "E"). Soon after the shooting, the City of Atlanta Police Department, the Fulton County District Attorney's Office, and the Georgia Bureau of Investigation conducted an investigation surrounding the death of Corey Ward, including taking photographs, collecting physical data and measurements, and obtaining witnesses statements. (Gardner dep., pp. 47, 53). Pursuant to the evidence obtained from the investigation, a Fulton County grand jury indicted Officer Bunn with criminal charges of Felony Murder, Aggravated Assault, and Violation of the Oath of Office. (Bunn dep., p. 53). Needless to say, the District

Attorney of Fulton County and a Fulton County grand jury determined that there was sufficient evidence to find that Defendant Bunn was not in any immediate danger prior to the shooting and that his shooting of Corey Ward was unreasonable and not justified.

## II.   THE PHYSICAL EVIDENCE AND TESTIMONY OF EXPERTS DEMONSTRATE THAT THE TAHOE POSED NO DANGER TO BUNN OR ANYONE ELSE PRIOR TO AND AT THE SHOOTING.

The physical evidence collected from the scene by the Atlanta Police Department and the Georgia Bureau of Investigation proves that neither Corey Ward nor his Tahoe SUV were a threat to Defendant Bunn at any time. (Photographs of Scene attached as Exhibit "E"; Gardner dep., p. 150). Because there is no evidence of tire or gauge marks at the scene, the photographs taken immediately after the shooting prove that Corey Ward did not accelerate or spin the tires of the SUV as claimed by Defendant Bunn and Officer Mulkey. (See Photographs of Scene attached as Exhibit "E"; Gardner dep., p. 127, 153). Finally, the trajectory angles of the bullets establish that Defendant Bunn was located off to left of the SUV Tahoe (driver side) and not in the direct path of the Tahoe as Defendant Bunn argues in his motion. (See Photographs of Trajectory Angles attached as Exhibit "F"; Gardner dep., pp. 127, 153).

In addition to the physical evidence, the testimony of Ross Gardner, Plaintiffs' expert, proves that Tahoe SUV was no threat to Bunn or Mulkey at the time of the shooting. (See Plaintiffs' Identification of Ross Gardner attached as Exhibit "G"). As an expert in Crime Scene Reconstruction and Bloodstain Pattern Analysis, Mr. Gardner conducted a full reconstruction and analysis of the shooting after reviewing the photographs, APD Criminal Homicide File, Autopsy of Corey Ward, and deposition testimony of Defendant Bunn. (See Plaintiffs' Identification of Ross Gardner attached as Exhibit "G"). After conducting his analysis, Mr. Gardner concluded there is no evidence that the Tahoe was accelerating at a high rate of speed or "gunned the acceleration" prior to and at the time of the shooting. (See Gardner dep., p. 124-125, 152-153; See Photographs of Trajectory Angles attached as Exhibit "F"; Plaintiffs' Identification of Ross Gardner attached as Exhibit "G"; Crime Scene Analysis Trajectory Sketch of Ross Gardner attached as Exhibit "H"). In fact, Mr. Gardner testified that Corey Ward's vehicle "was not going really fast" at the time of this incident. (Gardner dep., p. 127).

Ross Gardner also opined that Defendant Bunn was not in the danger of being hit when he fired the two fatal shots at Corey Ward's head. (See Gardner dep., p. 150; See Photographs of Trajectory Angles attached as Exhibit "F"; See Plaintiffs' Identification of Ross Gardner attached as Exhibit "G"; Crime Scene

Analysis Trajectory Sketch of Ross Gardner attached as Exhibit "H"). Significantly, Ross Gardner testified that the trajectory of bullets prove that Bunn was not in the direct path of the Tahoe when he fired the 1st shot but instead was located in the left front quarter panel of the Tahoe. (See Gardner dep., p. 150; See Photographs of Trajectory Angles attached as Exhibit "F"; See Plaintiffs' Identification of Ross Gardner attached as Exhibit "G"; Crime Scene Analysis Trajectory Sketch of Ross Gardner attached as Exhibit "H"; ). When the 2nd shot was fired, Bunn was located on the driver side window of the Tahoe and the SUV was passing him. (See Gardner dep., pp. 150-152; See Photographs of Trajectory Angles attached as Exhibit "F"; Plaintiffs' Identification of Ross Gardner attached as Exhibit "G" Crime Scene Analysis Trajectory Sketch of Ross Gardner attached as Exhibit "H"). Based on the evidence, it is not scientifically possible for the Tahoe SUV to have struck Bunn as he and Mulkey testified under the oath. (Gardner dep., pp. 150-152; Photographs of Trajectory Angles attached as Exhibit "F"; Plaintiffs' Identification of Ross Gardner attached as Exhibit "G"; Crime Scene Analysis Trajectory Sketch of Ross Gardner attached as Exhibit "H"). Even Defendant's own expert, Kelly Fite, reinforces that Bunn was not struck by the SUV as he claims. (Fite dep., pp. 118-119).

Plaintiffs' police expert, former Chief Donald Van Blaircom, has also extensively reviewed the available evidence in this case and concluded that Bunn "recklessly placed himself at risk" by attempting to move from the driver side of the police vehicle to the passenger side of the police vehicle. (Blaircom dep., pp. 26, 31-32, 35, 91; See p. 5 of Plaintiffs' Identification of D.P. Van Blaircom attached as Exhibit "I"). Based on more than 40 years of police experience and training, Mr. Blaircom also testified that Bunn's "use of deadly force was excessive, unreasonable and a violation of both APD policy and a reasonable standard of care." (See p. 7 of Plaintiffs' Identification of D.P. Van Blaircom attached as Exhibit "I"; Blaircom dep., pp. 26, 31-32, 35, 91). Simply put, Mr. Blaircom opined that Bunn's act of shooting Corey Ward as he was driving past was not justified and that an objectively reasonable officer would have stayed in a place of safety behind the driver's side of the police vehicle and not attempt to approach the Tahoe SUV to extricate the occupants. (Blaircom dep., pp. 26, 31-32, 35, 91). Former Chief Blaircom believes that the unreasonable actions by Bunn directly caused a dangerous situation and ultimately the death of Corey Ward. (Blaircom dep., pp. 26, 31-32, 35, 91).

### III. THE TESTIMONY OF DEFENDANT'S EXPERT, KELLY FITE, PROVES THAT BUNN'S STORY WAS FABRICATED AND THAT BUNN WAS NOT IN DANGER WHEN HE SHOT COREY WARD.

From the time of the shooting and throughout this case, Defendant Bunn has fabricated a story that he shot Corey Ward because he was in fear of his life. Bunn and Mulkey have both testified under oath that Bunn was in the direct path of the Tahoe SUV just before the shooting and that he fired his gun when the Tahoe SUV struck him. (Bunn dep., pp. 62, 145; Mulkey dep., pp. 94-95; 263-264).

As discussed above, Bunn and Mulkey's version of events directly contradicts the physical and scientific evidence from the scene. The physical and scientific evidence collected by City of Atlanta Police Department and Georgia Bureau of Investigation proves that Bunn was not in the direct path of Tahoe SUV before or after the shooting and thus was never in any danger as he and Mulkey claim. (Photographs of Scene attached as Exhibit "E"; Photographs of Trajectory Angles attached as Exhibit "F"). Significantly, Defendant's own expert, Kelly Fite, admitted that Bunn was not in the direct path of Tahoe SUV when he fired and his claim that he was pinned by the Tahoe SUV is untrue. When specifically asked about the truthfulness of Bunn's claim that he was struck by the Tahoe SUV, Mr. Fite testified as follows:

> Q:   I want you to assume that he [Bunn] testified or gives a statement that the reason he fired the gun is because he was

> pinned by the SUV and as a result thought his life was in danger. I want you to assume that. Your testimony in this case is that this is not true, correct, that's physically and scientifically impossible.

A:   We know he wasn't pinned.

Q:   So it was scientifically and physically impossible for him to be pinned, is that correct?

A:   Correct.

(Fite dep., p. 118, line 15-25; p. 119, line 1).

Significantly, Mr. Fite also testifies that Mr. Bunn was not in danger of being hit by the Tahoe SUV when he fired the gun as he claims:

Q:   Based on the time of being shot, based on the same standard that you used and applied to that other case, you agree with me that at the time of the shooting Mr. Bunn's life is not in danger?

A:   When he's shot, he wasn't in front of the car.

Q:   So my question is, do you agree with me that his life was not in danger when he shot the first shot?

A:   My answer would be when he shot, he was not in front of the car.

Q:   You can agree with me that at the time he shoots, Mr. Bunn is not in danger of being hit by the car; is that correct?

A:   When he shot, yes.

Q:   Based on your experience and training, is there ever a time that you've learned, you've seen where it's justified to fire a gun at

a car if you are not in danger of being hit in your 30 –some years doing this, have you ever seen that's justified?

A:    No.

Q:    And in fact, in your experience, they train these officers not to shoot at a vehicle that is not putting them in danger; isn't that correct?

A:    That's correct.

Q:    You've been involved where the shots, a police officer's shooting was justified or not, correct?

A:    Yes.

Q:    And you just testified that your understanding, it is not justified for a cop to shoot at a car when his life is not being put in danger by that car. Isn't that your understanding?

A:    That's my understanding.

Q:    And what we do know then is on physical evidence he had no chance of being hit by that car, correct?

A:    He is out of the path of the car when he shot.

(Fite dep., p. 114, lines 1-11, 23-25; p. 115, lines 1-12; p. 116, lines 9-17; p. 117, lines 20-24).  As noted above, Defendant's own expert, Kelly Fite, proves that Defendant's Bunn story was fabricated and that his life was not in danger when he fired the shots that killed Corey Ward.  As such, Defendant's motion for summary judgment should be denied.  See Hopkins v. Andaya, 958 F. 2d 881, 885 (9th Cir. 1992)("The Ninth Circuit held "that court may not simply accept what may be a

self-serving account by the officer. It must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational fact finder that the officer acted unreasonably".)

## ARGUMENT AND CITATION OF AUTHORITY

### I.   STANDARD OF REVIEW.

In <u>Reeves v. Sanderson Plumbing Products</u> 530 U.S. 133, 150-151 (2000), the Court noted that the standards for a motion for summary judgment and a motion for judgment as a matter of law are the same, and held:

> **[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.  Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.  Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.**

<u>Reeves</u> at 150-151. (emphasis added, internal citations, quotations omitted). Moreover, it is well settled that questions involving a defendant's state of mind are generally factual issues inappropriate for resolution by summary judgment. <u>Braxton-Secret vs. A.H.Robins Co.</u>, 769 F.2d 528, 531 (9th Cir. 1985).  If the evidence of the moving party conflicts with the evidence of the non-moving party, the judge must assume the truth of the evidence set forth by the non-moving party

with respect to that fact.  Leslie v. Grupo ICA, 198 F.3d 1152, 1158, (9th Cir. 1999).  Courts may not disregard direct evidence submitted by the party opposing the motion on the ground that no reasonable jury would believe it.  Id.

With regard to the appropriateness of excessive force cases being decided as a matter of law, Federal Courts have "repeatedly said" that "whether the force used to effect an arrest is reasonable is ordinarily a question of fact for the jury." Brisk v. Cityof Miami, 726 F. Supp. 1305, 1311 (SD Fla 1989);  Headwaters Forest Defense v. Burton (9th Cir. 2000) 240 F.3d 1185, 1198, vacated and remanded on other grounds, 122 S. Ct. 24 (2001).  Excessive force cases are "rarely" decided as a matter of law, "because the Fourth Amendment test for reasonableness is inherently fact-specific." Headmaster at 1198.

## II.   COLLATERALLY ESTOPPEL DOES NOT BAR PLAINTIFFS' CIVIL RIGHTS CLAIMS AGAINST BUNN.

First and foremost, the Defendant failed to cite to any case in which the Plaintiffs' right to a 42 U.S.C. § 1983 trial was denied based on a State court's criminal adjudication. The cases the Defendant cites are either based on general collateral estoppel principles or based on collateral estoppel that precluded specific issues in a subsequent litigation. What the Defendant is attempting to do is use this concept to take away the Plaintiffs' 14th Amendment right to not be deprived of life, liberty or property without due process of law. By denying the Plaintiffs' right

to a civil trial, this court will create a new line of Georgia law that permits State Court judges to preempt a citizen's constitutional right. This concept flies in the face of the United States Constitution and the intent of collateral estoppel. If collateral estoppel was meant to limit or abrogate Constitutional rights, this would be clearly defined and it is not.

Secondly, Georgia's privity requirement is not fulfilled in order for collateral estoppel to preclude Defendant Bunn from civil litigation. The Defendant claims that the plaintiffs' interests were represented and fully litigated in the criminal trial. In an effort to avoid liability, Defense counsel has ignored a basic tenant of both criminal and civil law. Defense counsel says in their most recent motion, "Georgia prosecutors and crime victims share the same underlying concerns: justice and punishment." (Defendants' Brief For Summary Judgment, p. 9). This may work in a general sense but the real goal of civil litigation is to wholly compensate the plaintiff based on non-frivolous claims. While justice is always involved in any criminal trial, the punishment aspect is strictly for criminal prosecution. This principle further supports the fact that District Attorney Paul Howard represented different interests from the Plaintiffs in the criminal trial than the Plaintiffs in this civil litigation. Punishment is the primary job and interest of the Prosecutors in the State of Georgia.

Thirdly, Defendant also cites his own testimony in an effort to emphasize the money spent and the relationship between Paul Howard and the plaintiffs. (Defendant's Brief for Summary Judgment, p. 7).  There will always be some type of relationship between the prosecutor and the victim. This does not necessarily mean they are in privity of each other. The case law defines privity, as "[O]ne party is a privy of another where there is a mutual or successive relationship to the *same right.* Privity is not established by the mere fact that the persons may happen to be interested in the same question or in proving the same state of facts." Webb v. Ethridge, 849 F.2d 546 (1988) *Quoting* Smith v. Wood, 115 Ga.App. 265, 154 S.E.2d 646, 649-50 (1967) (Emphasis Added).  The case law also indicates that "[p]rivity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the *same legal right* . . . [p]rivity does not mean those who might be affected and whose liability might be fixed by the same set of facts.'" Id. (Emphasis Added). Defendant's interpretation of this definition would create a standard that ALL victims who are a part of a criminal trial would be precluded from a civil trial because the civil and criminal litigation have similar goals and a similar set of facts.    The Georgia privity requirement is defined to avoid this type of interpretation. The Georgia definition emphasizes a connection so intertwined that

the same legal right is represented in both the civil and criminal trial.  The legal rights represented in the Defendant's criminal trial are very different from the Plaintiffs' exercise of rights today.

Finally, the Defendant also quotes the meaning of restitution to equate the goals of civil and criminal litigation. This definition hurts the Defendant's position. The relevant portion reads "[A]ll damages which a victim could recover against an offender in a civil action . . . *except* punitive damages and damages for pain and suffering, mental anguish or loss of consortium." <u>O.C.G.A.</u> § 17-14-2(2) (Emphasis Added). These exceptions to restitution's potential recovery for a victim are precisely why the privity cannot exist between these two parties. These avenues of potential recovery, like pain and suffering or punitive damages, are interests for the Plaintiffs that can only be pursued through civil litigation.  Not only did the Plaintiffs not receive restitution but also even if they did, their interests would not be completely represented.  These are the legal rights that the Plaintiffs are denied by precluding their civil claims.

In this case, Plaintiffs are no different from any other victim who has participated in the criminal prosecution and pursued later civil litigation. Even though the issue of collateral estoppel in cases involving reasonable use of force by an officer is a relatively new issue for Georgia Courts, the privity requirement

remains the same. Plaintiffs' legal rights were not and could not have been represented solely in the criminal prosecution. Since there is not adequate privity between the State of Georgia and the Plaintiffs, collateral estoppel is inappropriate.

As to the Defendant's Due Process argument, Due Process is violated by a binding judgment "on a litigant who was not a party or a privy and therefore has never had the opportunity to be heard." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 327 (1979). The fact that the Plaintiffs' rights are denied by precluding their claims is a direct violation of Due Process. In order to avoid injustice and to follow well-established Georgia law, the court must not preclude the Plaintiffs' claims and deny the Defendant's Renewed Motion for Summary Judgment.

## III. BUNN VIOLATED COREY WARD'S FOURTH AMENDMENT RIGHT BECAUSE IT IS UNREASONABLE TO SHOOT AT A PASSING CAR THAT DOES NOT POSE A THREAT IN ORDER TO STOP ITS OCCUPANTS ON SUSPICION OF A NONVIOLENT FELONY.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Supreme Court has held that the "Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Graham v. Connor, 490 U.S. 386, 394-95 (1989). In the seminal case of Tennessee v. Garner, 471 U.S. 1

(1985), the Supreme Court held that deadly force cannot be justified based merely on a slight threat. An officer may not use deadly force "unless it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Id. at 3.

A desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury. Deorle v. Rutherford, 272 F.3d 1272, at 1281 (9th Cir 2001). Significantly, **"a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify his concern."** Id. And, even though the decision to use deadly force can be difficult for an officer and often must be made in a "split second," "this fact alone will never immunize an otherwise unreasonable use of deadly force." Ford v. Childers, 855 F.2d 1271, 1276 (7th Cir. 1988) (en banc). Therefore, the "question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." Graham, 490 U.S. at 396.

In determining whether force is reasonable, Federal Courts must examine several factors, including 1) severity of the crime at issue; 2) the need for the application of force, 3) the relationship between the need and amount of force, and

4) the extent of the injury inflicted. Id.;  Lee v. Ferraro, 284 F. 3d 1188, 1197-198 (11th Cir. 2002).  Simply put, "the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." Id. at 1198.  Generally, "more force is appropriate for a more serious offense and less force is appropriate for a less serious one."  Id.  The Eleventh Circuit and other Federal Courts have traditionally held that whether deadly force was reasonable and justified, as well as whether police engaged in excessive force, is usually a question of fact for the jury.  Brisk at 1311 (S.D. Fla. 1989); Hopkins, at 885 (9th Cir. 1992).

In the case at bar, the overwhelming evidence in this case show that Defendant Bunn's actions were not reasonable and amounted to excessive force in violation of the Fourth Amendment.  As discussed extensively in *Plaintiffs' Summary of Evidence*, there is ample evidence that Defendant Bunn used excessive force when he shot Corey Ward.  Some of the highlights of the facts include the followings:

1. The fact that Corey Ward did not break into a vehicle or commit any crime. (Bunn dep., pp. 70; 85; Affidavit of Brown).

2. The fact that neither Corey Ward nor any of the passengers in the Tahoe SUV were armed with a gun or any kind of weapon. (Bunn dep., p. 88; Affidavit of Brown).

3.   The fact that Defendant Bunn and Officer Mulkey were investigating an alleged break-in of a vehicle (crime against property); not a violent crime committed against a person. (Bunn dep., p. 70).

4.   The fact that the physical evidence shows that Corey Ward did not gun the acceleration of the SUV or drive at a high rate of speed as he was leaving the parking lot.  (Exhibit "B,E,F"; Gardner dep., pp. 127, 153; Affidavit of Brown).

5.   The fact that Corey Ward did not aim or try to run over Defendant Bunn or Officer Mulkey prior to and at the time of the shooting. (Exhibit "B,E,F").

6.   The fact that Defendant Bunn made the conscious decision to move from the driver side of the police vehicle and approach the driver side of the Tahoe SUV prior to and at the time of the shooting. (Bunn dep., p. 139; See photograph of Unmarked Vehicle attached hereto as Exhibit "B").

7.   The fact that Atlanta Police Department's "Felony Stop" prohibited the actions taken by Defendant Bunn and Officer Mulkey on July 14, 2002.  (See Atlanta Police Department Felony Stop Policy attached Exhibit "C").

8.   The fact that the physical evidence collected from the scene proves that Bunn was to the left of the Tahoe SUV and not in path of the Tahoe SUV prior to and at the time of the shooting. (See Exhibit "B,E,F,G,H"; Gardner dep., pp. 150-152).

9.   The fact that the physical evidence collected from the scene proves that Tahoe SUV never struck Bunn and he was not in any danger prior to and at the time of the shooting.  (See Gardner dep., pp. 124-125, 152-153; Exhibit "B,E,F,G,H")

10.  The fact the physical evidence collected from the scene proves that the Tahoe SUV was not a threat or danger to Defendant

Bunn, Officer Mulkey, or anyone else at the time of the shooting. (Affidavit of Brown)

11. The fact that the use of force policy of the Atlanta Police Department prohibits Bunn from shooting at a moving vehicle that was attempting to leave the scene. (See Use of Force Policy of the Atlanta Police Department attached as Exhibit "D").

12. The fact that a Fulton County grand jury indicted Defendant Bunn with criminal charges of Felony Murder, Aggravated Assault, and Violation of the Oath of Office for the death of Corey Ward. (Bunn dep., p. 53).

In addition to the above reference evidence, the expert testimony of Plaintiff's expert, former Chief Blaircom, states flatly that no reasonable officer could have believed himself in danger when any of these shots were fired. (See pp. 3-5 of Plaintiffs' Identification of D.P. Van Blaircom attached as Exhibit "I"; Blaircom dep., pp. 25, 31-32, 35, 91). Applying the objective reasonableness standard of a police officer, Blaircom determined that Bunn's shooting of Corey Ward as he was driving away was "excessive, unreasonable, and a violation of both APD Policy and a reasonable standard of care." (p. 7 of Plaintiffs' Identification of D.P. Van Blaircom attached as Exhibit "I"; Blaircom dep., pp. 26, 31-32, 35, 91).

Plaintiffs' Crime Scene Analysis Expert, Ross Gardner's testimony reinforces the fact the Bunn's actions were unreasonable since the reconstruction of the crime scene proves that he was not in danger at the time he shot Mr. Ward in

the head. (Gardner dep., p. 150; Photographs of Trajectory Angles attached as Exhibit "F"; Plaintiffs' Identification of Ross Gardner attached as Exhibit "G"; Crime Scene Analysis Trajectory Sketch of Ross Gardner attached as Exhibit "H"). Mr. Gardner also established that Bunn fabricated his story when he testified that the Tahoe SUV struck him at the time of the shooting. (Gardner dep., pp. 150-152; Photographs of Trajectory Angles attached as Exhibit "F"; Plaintiffs' Identification of Ross Gardner attached as Exhibit "G"; Crime Scene Analysis Trajectory Sketch of Ross Gardner attached as Exhibit "H"). Even Defendant's expert, Kelly Fite, confirmed that Bunn's story did not match the physical and scientific evidence. (Fite dep., pp. 114-116). For all of the above reasons, genuine issues of fact exist on Plaintiffs' Fourth Amendment claim under 42 U.S.C. § 1983 and summary adjudication of his issue would be inappropriate.

## III. BUNN IS NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE GENUINE ISSUES OF FACT EXIST ON THE ISSUE OF WHETHER A REASONABLE POLICE OFFICER WOULD HAVE BELIEVED THAT HIS ACTIONS WERE LAWFUL.

The Court applies a two-part test to determine whether qualified immunity applies: (1) "whether- resolving all disputes of fact and credibility in favor of the party asserting the injury - the fact adduced at summary judgment show that the officer's conduct violated a constitutional right", and (2) at the time of the alleged constitutional violation, the constitutional right was "clearly established." Pearson

v. Callahan, 129 S. Ct. 808, 818 (2009); Kennedy v. City of Ridgefield, 439 F.3d 1055, 1060-61 (9th Cir. 2006).   The Court is no longer required to follow the Saucier v. Katz order of analysis.  Pearson, 129 S.Ct. at 817-818.

**A.    The Facts Taken in the Light Most Favorable to Plaintiffs Would Establish that Bunn Violated the Fourth Amendment.**

As discussed extensively in Part III, supra, and for all of the reasons forth therein, it is clear that, when taken in the light most favorable to the Plaintiffs, genuine issues of fact exist on the issue of whether Bunn violated the Fourth Amendment when he shot Corey Ward in the head.  Defendant cites a number of cases to support his argument that he did not violate the Fourth Amendment rights of Corey Ward.  These cases are both irrelevant and inapplicable to this case.  The cases of Pace, Robinson, and Terrell cited by Defendant in his brief are easily distinguishable from the facts in this case.  See Pace v. Capobianco, 283 F. 3d 1275 (11th Cir. 2002); Robinson v. Arrugueto, 415 F. 3d 1252 (11th Cir. 2005); Terrell v. Smith, 668 F. 3d 1244 (11th Cir. 2012).  Unlike the defendant officers in Pace, Robinson, and Terrell, the physical evidence from the scene and the affidavit of Rodriquez Brown directly contradicts the story of Defendant Bunn and thus creates a question of fact of whether Bunn's actions were reasonable at the time of the shooting.  Importantly, Defendant Bunn's actions of approaching the Tahoe, as it was moving, created a dangerous situation that precludes qualified immunity.

The law is clear in the Eleventh Circuit and other jurisdictions that defendant officers **"cannot claim the protection of qualified immunity when their own objectively unreasonable actions created the very risk that generated the eventual use of deadly force."** Swofford v. Eslinger, 671 F. Supp. 2d 1289, 1305 (M.D. Fla. 2009) aff'd 395 Fed. App'x 559 (11th Cir. 2010); See also, Kirby v. Duva, 530 F. 3d 475, 482 (6th Cir. 2008)("Where a police officer unreasonably placed himself in harm's way, his use of deadly force may be deemed excessive").

The Estate of Starks v. Enyart, 5 F. 3d 230, 234, (7th Cir. 1993), is analogous to the case at bar. In Estate of Starks the officer claimed qualified immunity after he shot and killed a suspect fleeing in a stolen car. The Seventh Circuit found that the officer's actions were unreasonable since he stepped in front of the plaintiff's vehicle. Id. In refusing to grant the officer qualified immunity, the Court stated that "police officers who unreasonably create a physically threatening situation in the midst of a Fourth Amendment seizure cannot be immunized for the use of deadly force." Id. Like the defendant officers in Swofford, Estate of Starks, and Kirby, Defendant Bunn is not entitled to qualified immunity since he placed himself in harm's way and unreasonably used deadly force.

**B.    THE RIGHT TO BE FREE FROM UNREASONABLE USE OF FORCE WAS CLEARLY ESTABLISHED IN 2002.**

In his motion, Bunn argues that he is entitled to qualified immunity because there were no prior cases that put him on notice that his actions were unconstitutional. (See pp. 21-23 of Defendant's Brief for Summary Judgment). However, preexisting case law tied to precise facts are not essential to overcome qualified immunity. Marsh v. Butler Co., 268 F. 3d 1014, 1031 (11th Cir. 2001); Vineyard v. Wilson, 311 F. 3d 1340, 1355 (11th Cir. 2002). In Hope v. Pelzer, 536 U.S. 730 (2002), the Supreme Court held any requirement that facts of previous cases be "materially similar" to the case at issue is a "rigid gloss on the qualified immunity standard" that is "not consistent with our cases." Hope, 536 U.S. at 739. Prior cases need not be "fundamentally similar" to the case at issue either. Id. at 741; Vineyard at 1355. The salient question is whether Bunn's actions "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to him, notwithstanding the lack of fact-specific case law." Lee v. Ferraro, 284 F. 3d 1188, 1199 (11th Cir. 2002).

In obvious cases involving the use of deadly force, the standards from Tennessee v. Garner and Graham v. Connor, explained above, clearly establish the answer. As set forth above, the Supreme Court long ago established that an officer may not "seize an unarmed, non-dangerous suspect by shooting him dead."

Tennessee v. Garner, 471 U.S. 1, 3 (1985).  This principle has been repeatedly upheld throughout to the nation.  As demonstrated recently in Ayers v. Officer Harrison, 2012 U.S. Dist. LEXIS 20746, Honorable Judge Richard Story held that an officer's "actions of shooting a non-dangerous citizen to prevent escape is not constitutionally sanctioned" and clearly a constitutional right long established by the Supreme Court in Garner. See also MsCaslin v. Wilkins, 183 F. 3d 775, 778 (8th Cir. 1999)(Court held that limitations on the use of deadly force to prevent escape of fleeing felon has been clearly established by Fourth Amendment in the Garner case); Estate of Stark at 234 (Court established precedent that police officers who unreasonably create a physically threatening situation in the midst of a Fourth Amendment seizure cannot be immunized from the use of deadly force."). Hence, there can be no doubt that at the time of this July 14, 2002 shooting; the preexisting law provided Defendant Bunn with 'fair warning' that his unjustified use of deadly force was unlawful.

## IV.   BUNN IS NOT ENTITLED TO OFFICIAL IMMUNITY BECAUSE HE VIOLATED SPECIFIC MINISTERIAL DUTIES PRIOR TO AND AT THE TIME OF THE SHOOTING.

In his last attempt to escape responsibility for the death of Corey Ward, Defendant Bunn argues that he is entitled official immunity from Plaintiffs' state tort claims, including wrongful death, assault and battery, and negligence.  (See pp.

22-25 of Defendant's brief for summary judgment).  However, Georgia law is clear that Defendant Bunn "may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions." See GA. CONST. art. I, § 2, ¶ 9(d).  Thus, the threshold question is whether Bunn violated his ministerial duty and/or acted with intent to injure Corey Ward. The answer to this question is affirmative.

"A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." Daley v. Clark, 282 Ga. App. 235 (2006).  Prior to and during the shooting of Corey Ward, Defendant Bunn was required to act in accordance with the written policies of the City of Atlanta Police Department, including the policies for a "felony stop" and "use of force". (Pennington dep., pp. 16-18).  Richard Pennington, the Chief of Police for the Atlanta Police Department, testified that Bunn did not have discretion not to follow policies but was required to execute them on the night of July 14, 2002.  (Pennington dep., pp. 16-18).  It is undisputed that Bunn violated APD policy for felony stop when he, among other things, attempted to stop and arrest the occupants in the Tahoe SUV

without a back up unit.  (See ¶ 1, 2, and 3 of APD Felony Stop Policy attached as Exhibit "C").  Significantly, the APD Felony Stop policy prohibits an officer from approaching the vehicle or attempting to make an arrest until all of the occupants are out of the vehicle.  (See ¶ 6, 7, 8, 9, 10, and 11 of APD Felony Stop Policy attached as Exhibit "C").  Defendant Bunn's own testimony proves that this important policy was not followed.  If Bunn had followed this policy, he would have never been in a position to use deadly force.  Moreover, Defendant Bunn violated the APD use of force policy when he shot at the Tahoe SUV that posed no threat to him or Mulkey and was leaving the scene.  (See APD Firearms Policy attached as Exhibit "D").

Finally, the overwhelming evidence shows that Bunn acted with intent to injure Ward when he shot him in the head as his vehicle was passing him.  As testified by Defendant's own expert, Kelly Fite, Bunn was not in the direct path of the SUV and not in danger of being hit when he fired the gunshots in this case. (Fite dep., pp. 116-118).  Bunn's fabricated story that he was hit by the SUV (despite physical evidence to contrary) proves that his actions were not justified and that he shot Ward in order to prevent him from escaping.  With the evidence showing that Bunn shot Ward as he was attempting to leave the scene and that he

fabricated the events of what happened, a jury could reasonable find that Bunn acted with deliberate intent to do wrong and cause severe harm to Ward.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that Defendant's Motion for Summary Judgment be denied in its entirety.

Respectfully submitted this ___4th___ day, 2012.


**COCHRAN, CHERRY, GIVENS, SMITH, SISTRUNK, & SAMS, P.C.**


  /s/Shean D. Williams_____
**Hezekiah Sistrunk, Jr., Esq.**
Georgia Bar No. 649413
**Shean D. Williams, Esq.**
Georgia Bar No. 764139
**M. Gino Brogdon, Jr. Esq.**
Georgia Bar No. 949808
***Attorneys for the Plaintiffs***

1400 The Candler Bldg.
127 Peachtree Street, NE
Atlanta, Georgia 30303
(404)222-9922
(404)222-0170 (fax)

**IN THE UNITED STATE DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

JOHN ARNOLD and MONESIA             :
YOUNGBLOOD, Individually and as      :
Co-Administrator of the Estate of        :
COREY WARD, Deceased                 :
                                                   :
        Plaintiffs,                       :        CIVIL ACTION NO:
                                                   :        1:03-CV-0087-CAP
                                                   :
vs.                                               :
                                                   :
RAYMOND S. BUNN, individually and    :
in his Official Capacity as a Police Officer :
of the City of Atlanta Police Department;  :
TERRY L. MULKEY, individually and in  :
his official capacity as a Police Officer of :
the City of Atlanta Police Department;     :
RICHARD PENNINGTON,                  :
Individually and in his Official Capacity as :
Chief of Police of the City of Atlanta Police :
Department; CITY OF ATLANTA, a        :
Municipal Corporation of the State of       :
Georgia; and JOHN DOES,               :
Nos. 1 through 3,                        :

---

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the within and foregoing

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT BUNN'S**

**MOTION FOR SUMMARY JUDGMENT** on all counsel of record via the

CM/ECF system to:

William J. Atkins, Esq.
David B. Fife, Esq.
Atkins & Fife, LLC
6400 Powers Ferry Road, Suite 355
Atlanta, Georgia 30339

Robert N. Godfrey, Esq.
Tamara N. Baines, Esq.
LaShawn W. Terry, Esq.
City of Atlanta Law Department
68 Mitchell Street, SW, Suite 1400
Atlanta, Georgia 30303-3520

This 4th day of June, 2012.

/S/Shean D. Williams
**Shean D. Willliams, Esq.**
State Bar No. 764139
sdw@sistrunklaw.com
*Attorney for Plaintiffs*

**COCHRAN, CHERRY, GIVENS, SMITH, SISTRUNK & SAMS, PC**
1400 The Candler Building
127 Peachtree Street, N.E.
Atlanta, Georgia 30303
404.222.9922
404.222.0170 (Fax)