UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOHN ARNOLD and MONESIA
YOUNGBLOOD, individually and as
co-administrators of the estate of
COREY WARD, deceased,

        Plaintiffs,

    v.

RAYMOND S. BUNN, individually
and in his official capacity as a police
officer of the City of Atlanta Police
Department; THE CITY OF
ATLANTA; et al.,

        Defendants.

CIVIL ACTION NO.

1:03-CV-0087-CAP

## **A M E N D E D   O R D E R**

The court's order in this case issued on March 26, 2013 [Doc. No. 155] is hereby vacated. This order now constitutes the order of the court, and the parties should note the change to Section II.B.4.

---

This matter is before the court on the defendant the City of Atlanta's ("the City") motion for summary judgment [Doc. No. 123], the City's motion to strike or in the alternative to deny consideration as untimely and not properly before the court [Doc. No. 144] the plaintiffs' response to the City's motion for summary judgment [Doc. No. 143], and the defendant Raymond S.

Bunn's ("Bunn") motion for summary judgment [Doc. No. 130]. In addition, the court will address the plaintiffs' motion to strike unauthenticated documents used in Bunn's motion for summary judgment [Doc. No. 136] and Bunn's motion to strike the affidavit of Rodriguez Brown [Doc. No. 141].

## I. FACTUAL BACKGROUND

In deciding a motion for summary, the court must view the evidence in the light most favorable to the non-movant. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).

On the night of July 13, 2002, through the early morning of July 14, 2002, Atlanta police officers Bunn and his partner Terry Mulkey were patrolling the Buckhead Village area of Atlanta in an unmarked police car. Bunn was wearing a shirt that had the words "Atlanta Police Department" written on it in small letters but was otherwise in plain-clothes.

At approximately 3:00 AM, Officer Mulkey heard a window break and saw a black male, later identified as Jamal Smith, coming out of the broken window of a parked Buick. Officer Mulkey pulled the police car into the parking lot where the Buick was parked. Smith emerged from the car and crossed the parking lot to a Chevrolet Tahoe that was also parked there. At this point, Bunn exited the unmarked police car and initiated a foot pursuit

of Smith. Smith entered the Tahoe as it was driving away from where it had been parked. Corey Ward, the deceased, was driving the Tahoe.

After the Tahoe began to drive away, Officer Mulkey backed the unmarked police vehicle into a position to try to stop the Tahoe from exiting the parking lot. The Tahoe stopped initially, and then began driving slowly towards the exit of the parking lot. Bunn fired two shots at the Tahoe, the first of which struck and killed the driver, Corey Ward.

## II. LEGAL DISCUSSION

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure authorizes a court to enter summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156 (1970); *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an

absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson*, 74 F.3d at 1090. Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide issues of material fact but to decide only whether there is such an issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The applicable substantive law will identify those facts that are material. *Id.* at 247. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *Id.* Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* In order for factual issues to be "genuine" they must have a real basis in the record. *Matsushita*, 475 U.S. at 586. When the

4

record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Id.*

**B. Bunn's Motion for Summary Judgment**

In support of his renewed motion for summary judgment [Doc. No. 130], Bunn puts forth four theories under which he argues the court should grant summary judgment in his favor. First, Bunn argues that collateral estoppel bars the plaintiffs' claims against him. Second, he argues that his use of deadly force did not violate Ward's Fourth Amendment rights. Third, he argues that he is entitled to qualified immunity as to the plaintiffs' 42 U.S.C. § 1983 claims. Finally, he argues that he is entitled to official immunity as to the plaintiffs' state law claims. The court will address each theory in turn.

*1. Theory 1: Collateral estoppel bars the plaintiff's claims*

The basic premise for Bunn's claim here is that he was indicted for Ward's murder in 2005, and in that trial, parties in privity to the plaintiffs here had a "full and fair opportunity to litigate the fact issues" [Doc. No. 130 at 4] relevant to the plaintiffs' claims in this civil matter. On December 19, 2005, the Fulton County Grand Jury indicted Bunn for Ward's murder, *Bunn v. State*, 284 Ga. 410 (2008), and his primary defense was that he was

immune from prosecution under O.C.G.A. § 16-3-24.2, which provides for immunity from criminal prosecution where use of threats or force is justified. The superior court in Bunn's criminal trial found that he was immune from prosecution.

Bunn argues that the superior court's finding that his use of force was justified should preclude the plaintiffs in the instant civil matter from litigating that issue. Bunn cites no case in which a court denied a plaintiff's right to a ' 1983 claim based on a criminal adjudication, and he admits that this is an issue of first impression in the Eleventh Circuit. He puts forth three arguments to support this theory: (1) sufficient privity exists between the State and the plaintiffs (the victim's family) here to meet even Georgia's restrictive definition of privity, (2) sufficient safeguards existed in the underlying criminal proceeding to satisfy due process requirements, and (3) application of collateral estoppel in this instance serves the underlying purpose behind qualified immunity [Doc. No. 130 at 7].

In essence, Bunn asks the court to disallow a crime victim (or victim's family) from being able to sue in civil court for damages when a criminal defendant is exonerated on the dispositive issue(s). The court is unwilling to follow this path. In Georgia, prosecutors represent the interests of the people

6

of the state. Plaintiffs in a civil trial for damages arising from a criminal act are seeking to be made whole through monetary reimbursement. And while the interests of crime victims certainly play a role in prosecution, this role could hardly be said to rise to the level of legal privity, which requires "a mutual or successive relationship to the same right." *Webb v. Ethridge*, 849 F.2d 546, 549 (11th Cir. 1988). The prosecutor in Bunn's criminal trial for murder simply cannot be said to have "represented the same legal right," as the plaintiffs are claiming here for violation of constitutional rights. The plaintiffs here were not parties in Bunn's criminal trial and the restrictive privity requirement in Georgia precludes a finding that the plaintiffs are in privity with the State of Georgia. *See Webb*, 849 F.2d at 549 (stating Georgia privity law as: "One party is a privy of another where there is a mutual or successive relationship to the same right. Privity is not established by the mere fact that the persons may happen to be interested in the same question or in proving the same state of facts."). Therefore, the court concludes that Bunn's collateral estoppel argument is without merit.

7

### 2. Theory 2: The Use of deadly force did not violate Ward's Fourth Amendment Rights

42 U.S.C. § 1983 gives parties a civil cause of action to sue governments and government officials for violations of constitutional rights. Where, as here, a party's claims arise out of an arrest or investigatory stop, the claims must be analyzed under the Fourth Amendment of the United States Constitution. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The Supreme Court has established a "reasonableness standard" for this analysis that "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396. An individual's Fourth Amendment interests include the right to be free from "unreasonable searches and seizures," and this "encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Id.* at 394–95. Courts must analyze an excessive force claim "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

The Eleventh Circuit has enumerated three factors for assessing reasonableness in the use of deadly force: if the officer

(1) has probable cause to believe that the suspect poses a threat
of serious physical harm, either to the officer or to others or that
he has committed a crime involving the infliction or threatened
infliction of serious physical harm; (2) reasonably believes that
the use of deadly force was necessary to prevent escape; and
(3) has given some warning about the possible use of deadly force,
if feasible.

*Terrell v. Smith*, 668 F.3d 1244, 1251 (11th Cir. 2012).

These factors serve as a guide, but a court "must still slosh [its] way through the factbound morass of 'reasonableness.'" *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 383 (2007)).

Turning to Bunn's motion for summary judgment, the court must conduct its reasonableness assessment by examining all of the facts in the light most favorable to the plaintiffs (the non-moving parties). The parties do not dispute that Bunn witnessed an individual removing himself through the broken window of a parked car who then ran to and entered the Tahoe the decedent Ward was driving. The parties also do not dispute that Bunn and his partner, Officer Mulkey, then moved their car in an effort to block the Tahoe from leaving the parking lot and that Ward began to drive towards the exit of the parking lot.

The parties disagree, however, on the exact circumstances at the time of the shooting. Bunn states that immediately prior to the shooting, he had

ordered the driver of the Tahoe to stop and that the driver had accelerated towards Bunn and his partner. Bunn says that he fired at the vehicle out of self defense for fear of his own safety, his partner's, and any nearby pedestrians. The plaintiffs, on the other hand, argue that Bunn had stepped to the side of the Tahoe when he shot at the vehicle and that the Tahoe did not pose any danger to Bunn, his partner, or any pedestrians because it was neither accelerating quickly nor heading towards any person. The plaintiffs rely primarily on the affidavit of Rodriguez Brown ("Brown") for evidentiary support of these factual assertions. Bunn has filed a motion to strike this affidavit for being improper because of lack of personal knowledge and failure to supplement discovery [Doc. No. 141]. The plaintiff has not filed a response.

Brown makes a number of statements pertaining to the night of the incident in his affidavit [Doc. No. 137-1]. Bunn argues in his motion to strike that many of Brown's statements should be struck because Brown could not have the requisite personal knowledge about the alleged facts therein to be admissible under Federal Rule of Evidence 602. Each of Brown's statements reflects his own perception of the circumstances, and evidence from his initial interview with the police immediately following the incident [Doc. No. 146-1]

10

shows that he would have been in a position to witness the events.[1] As such,

his affidavit meets the personal knowledge requirement of Rule 602.

Nevertheless, Bunn also argues that the entire affidavit should be

struck because the plaintiffs failed to promptly supplement their discovery

responses to include Brown's contact information, whereabouts, and new

recollection of the events on the night in question included in the affidavit. In

response to Bunn's initial interrogatories concerning the witnesses in the

---

[1] The plaintiffs have filed their own motion to strike unauthenticated documents [Doc. No. 136]; including the statement Brown gave to the police immediately following the incident. The plaintiffs argue that these documents (all of which are similar police interview statements from witnesses) have not been authenticated by an accompanying affidavit and therefore should be struck. The plaintiffs rely on *Brown v. Marriott International, Inc.*, No. 04-3255, 2006 U.S. Dist. WL 2189695 (N.D.G.A. July 31, 2006) for the proposition that unauthenticated documents do not meet the requirements of F.R.C.P. 56(e) and therefore cannot be considered at the summary judgment stage. As Bunn points out in response, it is well established in the Eleventh Circuit that documents submitted in inadmissible form but which are otherwise admissible may be considered at summary judgment. *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996). The documents in question are witness interviews that could be authenticated by Fulton County DA employees or Atlanta Police officers who participated in the interviews, evidence custodians, or the witnesses themselves at trial under Fed. R. Evid. 901. Furthermore, the court in *Brown* disagreed with that plaintiff's assertion that similar documents should be struck because the plaintiff there (as here) had not attacked the validity of the documents, only the documents' evidentiary basis. The court remains unpersuaded that the interview documents in question cannot properly be considered in evaluating this motion for summary judgment. Therefore, the plaintiffs' motion to strike is DENIED.

vehicle, the plaintiffs listed Brown as a potential witness for trial. This initial disclosure of Brown as a potential witness was enough for the plaintiffs to meet their obligations. Accordingly Bunn's motion to strike [Doc. No. 141] is DENIED.

Brown makes several statements in his affidavit that are pertinent to the court's analysis of reasonable force. He states, inter alia:

> At no time prior to, during, or after the shooting did Corey Ward drive the Tahoe SUV in [sic] direct path of Officer Bunn, Officer Mulkey, or anyone else.

> At no time prior to, during, or after the shooting did Corey Ward try to run over Officer Bunn or Officer Mulkey with the Tahoe SUV.

> At no time prior to, during, or after the shooting did Corey Ward aim the Tahoe SUV in the direction of Officer Bunn, Officer Mulkey or anyone else.

> Neither Bunn, Mulkey, nor any other person was standing in the direct path of [sic] Tahoe SUV prior to, during, or after the shooting.

> As Corey Ward was driving forward out of the parking lot, neither Officer Bunn, Officer Mulkey, or anyone else was in front of the path of the Tahoe SUV.

> As Corey Ward was driving forward out of the parking lot, Corey Ward did not accelerate the Tahoe SUV toward Officer Bunn or Officer Mulkey.

Affidavit of Rodriguez Brown ¶¶ 12–14, 17, 19–20 [Doc. No. 137-1] at 3–5.

The plaintiffs have also produced expert evidence from Ross Gardner that is pertinent to the excessive force analysis. The plaintiffs have identified Gardner, who is a crime scene analysis expert, as an expert witness for this case [Doc. Nos. 137-7]. Gardner prepared an extensive report attempting to reconstruct the circumstances of the night in question from the physical evidence available [Doc. No. 137-7 at 11–20]. Gardner's report indicates that Bunn was likely to his right of the front driver's side portion of the Tahoe when he shot Ward and that the evidence does not support "a belief that the Tahoe was dramatically accelerating" [Doc. No. 137-7 at 19]. The plaintiffs argue that Gardner's report establishes that the Tahoe did not pose a danger to Bunn, Mulkey, or anyone else at the time of the shooting.

Applying the guiding factors of *Terrell* to the facts the plaintiffs have put forward, the court concludes that a genuine issue of material fact exists as to whether Bunn violated Ward's Fourth Amendment rights. Read in the light most favorable to the plaintiffs, Brown's affidavit and Gardner's report demonstrate that there is a factual dispute as to whether Ward was driving the Tahoe in a manner that warranted Bunn's use of deadly force. Accepting the facts the plaintiffs present as true, Ward was not driving the SUV towards anyone at the time of the shooting and did not accelerate the SUV in

13

a dangerous manner.  Therefore, a reasonable jury could find that Ward's

driving of the SUV did not "pose a threat of serious physical harm, either to

the officer or to others," *Terrell* 668 F.3d at 1251.[2]

### 3. Theory 3: Qualified immunity bars the plaintiffs' constitutional claims

Qualified immunity protects government officials from civil suits

arising from circumstances in which officials performed their duties

reasonably. In assessing a claim for qualified immunity, a court must apply a

two-prong test to determine if the claimant is entitled to immunity:

> (1) whether the facts that a plaintiff has alleged make out a
> violation of a constitutional right . . . [and] (2) whether the right
> at issue was "clearly established" at the time of defendant's
> alleged misconduct.

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations omitted).

Under the Supreme Court's initial formulation of this test in *Saucier v.*

*Katz*, 533 U.S. 194 (2001), courts were required to follow the prongs in

sequential order. After the Supreme Court's ruling in *Pearson*, however,

courts are now free to address the prongs in whichever order best fits the

circumstances of the individual case. *Pearson*, 555 U.S. at 236 ("The judges of

---

[2] No party contends that the second prong of the first *Terrell* factor, that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm, applies here.

the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). To overcome a defense of qualified immunity for federal constitutional claims brought under 42 U.S.C. § 1983, the plaintiff must succeed on both prongs of the test.

The court has already determined that a reasonable jury could find that Bunn violated Ward's Fourth Amendment rights based on facts that are in dispute; therefore, the plaintiffs have satisfied the first prong of the qualified immunity standard. Nevertheless, Bunn will still be entitled to qualified immunity if the plaintiffs do not also succeed on the second prong of the analysis.

To succeed on the second prong of the qualified immunity standard, the plaintiffs must show that the law at the time of the incident clearly established the right Bunn allegedly violated. *See Morton v. Kirkwood*, 707 F.3d 1276, 4 (11th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "The right must be clear enough that any reasonable officer would understand that what he is doing violates that right." *Id.* (internal quotations omitted). The Eleventh Circuit has enumerated at least three ways a plaintiff

can demonstrate that a right was clearly established. First, the plaintiff can "produce a materially similar case decided by the Supreme Court, this court [the Eleventh Circuit], or the highest court of the relevant state." *Id.* (citing *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012). Second, in the absence of precedence, the "plaintiff can point to a 'broader, clearly established principle [that] should control the novel facts in [his] situation.'" *Id.* (alteration in original) (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). "Finally, a plaintiff may show that an 'official's conduct was so far beyond the hazy border between excessive and acceptable force that [the official] had to know he was violating the Constitution even without caselaw on point.'" *Id.* (alteration in original) (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000). "This test entails determining whether 'application of the [excessive force] standard would inevitably lead every reasonable officer in [the Defendants'] position to conclude the force was unlawful.'" *Id.* (alteration in original) (quoting *Priester*, 208 F.3d at 926–27).

In the 1985 case *Tennessee v. Garner*, the Supreme Court established that "[t]he use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable." 471 U.S. 1, 11

(1985). Specifically, the Court stated, "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. . . . A police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Id.* The Eleventh Circuit has held that *Garner* clearly establishes that when a suspect did not use or did not threaten to use his car as weapon, an officer is not justified in using deadly force to apprehend the suspect. *See Morton*, 707 F.3d at 5.

Viewing the facts in the light most favorable to the plaintiff here, there are genuine issues of material fact as to whether Ward was using or threatening to use the Tahoe as a weapon. The pertinent alleged facts which must be accepted as true for purposes of summary judgment are these: (1) Ward was not aiming the vehicle at anyone nor was anyone in the vehicle's path as he tried to exit the parking lot; (2) Bunn was to the side of the vehicle when he fatally shot Ward; (3) Bunn did not have probable cause to believe that Ward had committed a violent crime; (4) Ward did not have a gun or other weapon at the time of the shooting; and (5) Ward was not driving at a high rate of speed at the time of the shooting. Faced with these circumstances, Bunn would not be justified in using deadly force to

17

apprehend Ward, whom he at most suspected of committing a non-violent property crime. *Garner* clearly established this principle prior to the shooting. Therefore, the plaintiffs have also met the requirements of the second prong of the qualified immunity standard, and Bunn is not entitled to qualified immunity for the plaintiffs' federal claims.

### 4. Theory 4: Official Immunity

The remainder of the plaintiffs' claims against Bunn are state law tort claims for assault and battery, negligence, and wrongful death. Bunn has raised official immunity as a defense to these claims.

Under Georgia law police officers "may be subject to suit and may be liable for injuries and damages caused by the negligent performance of . . . their ministerial functions." Ga. Const. art. I, § 2, ¶ 9(d); *see also Cameron v. Long*, 549 S.E.2d 341, 344 (Ga. 2001). An officer acting within his discretionary functions is protected from suit for his actions under the doctrine of official immunity unless he acted with "malice or an intent to injure." *Cameron*, 549 S.E.2d at 344. Thus, the court is first tasked with determining whether Bunn's actions that form the basis for the plaintiffs' state law claims were ministerial or discretionary. In Georgia,

18

> [a] discretionary act is one calling for the exercise of personal
> deliberation and judgment, which in turn entails examining the
> facts, reaching reasoned conclusions, and acting on them in a way
> not specifically directed. On the other hand, a ministerial act is
> commonly one that is simple, absolute, and definite, arising
> under conditions admitted or proved to exist, and requiring
> merely the execution of a specific duty.

*Daley v. Clark*, 638 S.E.2d 376, 380 (Ga. Ct. App. 2006) (citations omitted).

Here, the plaintiffs argue that Bunn's actions were in his ministerial capacity and that he acted with the intent to injure Ward. The plaintiffs base the first part of this argument on the fact that Bunn allegedly did not follow the APD policy for felony stops and the use of firearms and that he did not have discretion in following those policies. The harm the plaintiffs complain of, however, stems from Bunn shooting Ward, not the whether he performed a felony stop in accordance with APD policy. Thus, the court must analyze whether the shooting was a ministerial or discretionary action, so only the firearm policy is relevant.

The APD firearm policy [Doc. No. 137-4] clearly states that an officer can use his firearm to protect his own life or the lives of others. The policy does not require the officer to either discharge or not discharge his firearm when faced with such a situation. The policy further cautions that the use of deadly force should not be taken lightly and must not only be legally

19

warranted but should also comport with legal, moral, and social codes "consistent with rational and humane social control in a democracy." The court concludes that the use of force under this policy cannot be understood as a "simple, absolute, and definite," *Daley*, 638 S.E.2d 380, ministerial action and is properly understood as a discretionary action requiring "the exercise of personal deliberation and judgment." *Id.*

Even if an officer's actions are discretionary, he will still not be entitled to official immunity if he acted "with actual malice or with actual intent to cause injury in the performance of [his] official functions." Ga. Const. of 1983, Art. I, Sec. II, Par. IX(d); *Gilbert v. Richardson*, 452 S.E.2d 476, 483 (Ga. 1994). "In the context of official immunity, actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact." *Selvy v. Morrison*, 292 Ga. App. 702, 704, 665 S.E.2d 401, 404–05 (2008). "Actual malice does not include implied malice, or the reckless disregard for the rights and safety of others." *Id.* "A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs."

Here, Bunn argues that he did not act with actual malice but instead acted in self-defense. The Supreme Court of Georgia has established that

when an officer shoots another person in self-defense, the officer is protected from tort liability by official immunity because "[o]ne who acts in self-defense does not act with the tortious intent to harm another, but does so for the non-tortious purpose of defending himself." *Kidd v. Coates*, 518 S.E.2d 124, 125 (Ga. 2003) (citing O.C.G.A § 51-11-1).

In Georgia, a person is justified in the use of deadly force under the self-defense doctrine if "he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person . . . ." O.C.G.A. 16-3-21(a); *Kidd*, 518 S.E.2d at 125. Therefore, if Bunn used deadly force against Ward in self-defense or in justifiable defense of others, he was acting with the justifiable intent to protect himself or others from death or serious physical injury and not the tortious intent to harm Ward, and he would be entitled to official immunity. *See Kidd*, 518 S.E.2d at 125.

As established above, based on the facts taken in the light most favorable to the plaintiffs, there is a genuine issue of material fact as to whether Ward posed a threat of death or great bodily injury to Bunn or anyone else. In addition, it is undisputed that Bunn intentionally shot Ward. If Bunn could not have reasonably perceived a threat from Ward that

21

justified the use of deadly force, then his intentional shooting of Ward would constitute a wrongful act not protected by official immunity. Therefore, the court finds that there is a genuine issue of material fact as to whether Bunn acted with actual malice in shooting Ward, and the court concludes that Bunn is not entitled to official immunity on the plaintiffs' state law claims.

Based on the foregoing analysis, Bunn's motion for summary judgment [Doc. No. 130] is DENIED.

### C. The City's Motion for Summary Judgment

The City filed its motion for summary judgment [Doc. No. 123] on April 4, 2012. Under Local Rule 7.1(B) the plaintiffs had until April 30, 2012 to file a response. The plaintiffs failed to respond during this time frame or to move for an extension of time to respond. Finally, on June 29, 2012, the plaintiffs filed a response [Doc. No. 143] to the City's motion for summary judgment. In this response, the plaintiffs state that they did not learn of the City's motion until June 22, 2012, which was why they made a late filing. The City then filed its motion to strike or deny consideration of the response [Doc. No. 144].

Under the Federal Rules, courts have discretion for considering untimely responses: a court "may, for good cause, extend the time: on motion made after the time has expired if the party failed to act because of excusable neglect." F.R.C.P. 6(b)(1)(B). Here, the plaintiffs argue in their response that they "did not receive electronic notification or notification by other means of the [City's] motion for summary judgment" [Doc. No. 143 at 2]. The court has considered the parties' filings, and under its discretion pursuant to Rule 6 of the Federal Rules of Civil Procedure, the court will consider the plaintiffs' responsive pleadings. As such, the City's motion to strike [Doc. No. 144] is DENIED.

The plaintiffs allege two counts specifically directed at the City. First, count four alleges a claim for compensatory damages for constitutional violations stemming from alleged policies and practices at the APD that enabled and encouraged the alleged violations of Ward's constitutional rights [Doc. No. 1 at 16-18]. Second, count six alleges a claim for compensatory and exemplary damages for the state law torts Bunn allegedly committed based on a theory of respondeat superior [Doc. No. 1 at 19].

As to count four alleging a violation of constitutional rights, the court has already determined that there is a genuine issue of fact as to whether Bunn violated Ward's constitutional rights on the night in question. This

same determination applies to the City because the plaintiffs' constitutional claim against the City is predicated on the constitutional claims against Bunn.

The plaintiffs argue that the City ratified Bunn's unconstitutional actions by being aware of his propensity to use excessive force but failing to retrain or punish Bunn for these actions. The plaintiffs' contention is based on four excessive force complaints that were filed against Bunn in the two years prior to the incident in question. The plaintiffs have put forth evidence in the form of Bunn's own deposition testimony that he was never retrained or otherwise disciplined after any of the four incidents. Bunn Dep. [Doc. No. 130-2] p. 185, lines 22–25; p. 186, lines 1–17. In response, the City argues that isolated incidents are not enough to meet the standard for the ratification or "failure to train" theory for municipality liability under § 1983. The City further argues that none of the prior complaints involved either Bunn's use of his weapon or his use of his weapon to stop a moving vehicle.

Liability under § 1983 attaches when any "person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. §

1983. Governmental entities such as the City of Atlanta are considered to be persons for purposes of § 1983. *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents; rather, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. *Id.* at 694–95. "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403–04 (1997). "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404. Thus, in order for the City to be held responsible for any violation of the plaintiffs' constitutional rights, the violation must have been caused by the City's policy or custom.

In certain limited circumstances, a "policy or custom" for purposes of § 1983 liability can stem from a municipality having inadequately trained its

employees. *McDowell v. Brown*, 392 F.3d 1283, 1291 (11th Cir. 2004) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989)). In the context of police training, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton*, 489 U.S. at 388. "Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389. The duties assigned to a specific officer must "make the need for more or different training . . . so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. "Liability must be premised on a finding that [the munipality's indifference] was highly likely to inflict the particular injury" at issue. *McDowell*, 392 F.3d at 1292.

Here, the plaintiffs' argue that the City was put on notice of Bunn's propensity to use excessive force, but failed to retrain him or otherwise discipline him for these actions; therefore, the City was deliberately indifferent to the rights of the persons with whom Bunn was likely to come into contact pursuant to his duties as a police officer. This, the plaintiffs

argue, amounted to a policy or custom in violation of § 1983 under the Supreme Court's "failure to train" standard in *Canton*.

The City argues that each of the four complaints were closed by the department as "not sustained," an administrative term meaning that the investigatory department determined that the complaints did not warrant action against Bunn. The City further argues that the plaintiffs have not shown that any decision that allowed Bunn's actions to continue unchecked rose to the level of the Chief of Police. Finally, the City argues that the plaintiffs have not put forth evidence showing that the City did not retrain Bunn.

At the summary judgment stage, the court must accept the evidence and inferences in the light most favorable to the plaintiff. Here, the plaintiffs have submitted the APD's investigative summary for one of the complaints and the citizen statements the APD recorded for two of the others, each of which present sufficient allegations of Bunn's prior use of excessive force. In fact, one of the four complaints led to a civil trial under § 1983 that resulted in a jury verdict in favor of the complainant. *See Lavender v. Bunn*, 2006 WL 6867618 Civil Action No. 1:02–CV–2716–RWS (N.D. Ga. Dec. 14, 2006). In addition, the defendants admit that each of the complaints against Bunn were dismissed as "not sustained," creating the inference, at least for

purposes of summary judgment, that the APD did not believe that the complaints warranted retraining or other administrative action for Bunn. Finally, according to the facts as presented by the plaintiffs, the City never retrained or otherwise disciplined Bunn after any of these complaints. Taking the facts in the light most favorable to the plaintiffs, the official complaints create the inference that knowledge of Bunn's propensity to use excessive force rose to the level of the administrative arm of the APD tasked with creating official department policies on this issue.

The court finds that the official reports of the incidents and the inference that the APD took no action in response are sufficient for the plaintiffs' § 1983 claim against the City to survive summary judgment. The City was given adequate notice of Bunn's propensity to use excessive force to constitute a "deliberate indifference" to the consequence that failing to retrain or otherwise discipline him was likely to lead to a deprivation of constitutional rights. By his own testimony, Bunn states that he believed his actions on the night in question "were in accordance to [his] training and the procedures that [he was] told to do as an Atlanta Police Officer by [his] superiors and [his] supervisor." Bunn Dep. [Doc. No. 130-2] p. 185 lines 22–25. As established above, a reasonable jury could conclude that these actions violated Ward's Fourth Amendment right to be free from the use of excessive

force. A reasonable jury could further conclude that the City's failure to retrain Bunn after four other excessive force complaints in three years (one of which led to a jury verdict for the complainant), constituted a deliberate indifference to the likelihood that Bunn would use excessive force in the future.

Accordingly, the City's motion for summary judgment as to the plaintiffs' federal claim is DENIED.

As to the plaintiffs' state law claim against the City, the plaintiffs' have not put forth any evidence or allegation showing that the City has waived its right to sovereign immunity. Article IX, Section II, Paragraph IX of the Georgia Constitution and O.C.G.A. § 36-33-1 grant municipalities immunity from liability for state law damages unless the municipality waives such right by purchasing liability insurance. *Reese v. City of Atlanta*, 583 S.E.2d 584, 585 (Ga. Ct. App. 2003). Accordingly, the City's motion for summary judgment as to the plaintiffs' state law claim is GRANTED.

## III. Conclusion

Based on the foregoing, the City's motion for summary judgment [Doc. No. 123] is hereby DENIED IN PART and GRANTED IN PART, the City's motion to strike or in the alternative to deny consideration [Doc. No. 144] is DENIED, Bunn's motion for summary judgment [Doc. No. 130] is DENIED,

the plaintiffs' motion to strike unauthenticated documents is DENIED, and

Bunn's motion to strike the affidavit of Rodriguez Brown [Doc. No. 141]

DENIED.

The parties are directed to file their joint proposed pretrial order within

30 days of the date of this order.

**SO ORDERED** this 29th day of March, 2013.

/s/Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge