# IN THE UNITED STATE DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| JOHN ARNOLD and MONESIA YOUNGBLOOD, Individually and as Co-Administrator of the Estate of COREY WARD, Deceased | : <br> : <br> : <br> : |
| Plaintiffs, | : <br> :    CIVIL ACTION NO: <br> :    1:03-CV-0087-CAP |
| vs. : | : |
| RAYMOND S. BUNN, individually and in his Official Capacity as a Police Officer of the City of Atlanta Police Department; et. al | : <br> : <br> : <br> : <br> : |

## PLAINTIFFS' OBJECTION AND BRIEF IN REPLY TO DEFENDANT CITY OF ATLANTA'S NOTICE OF APPEAL

COME NOW Plaintiffs and files this Objection and Brief in Reply to Defendant City of Atlanta's Notice of Appeal filed on April 8, 2013, and respectfully shows the Court as follows:

### INTRODUCTION

On July 13, 2002, Defendant Bunn fired two gunshots at the head of Corey Ward without legal justification, causing the unnecessary death of an 18-year-old man. In an effort to escape responsibility for Corey Ward's death, Defendant City of Atlanta moved for summary judgment to dismiss Plaintiffs' federal civil rights

claims and state claims for the wrongful death of Corey Ward. However, the overwhelming evidence proved that Defendant Bunn not only violated Corey Ward's Fourth Amendment Rights but that the City of Atlanta failed to adequately train and supervise Defendant Bunn. For the reasons set forth below, Defendant City of Atlanta's Notice of Appeal and Petition for Discretionary Appeal should be denied.

## PROCEDURAL HISTORY

On April 4, 2012, Defendant City of Atlanta (hereinafter sometimes referred to as "Defendant" or Defendant COA") filed a Motion for Summary Judgment. On March 26, 2012, Honorable Judge Charles Pannell, Jr. of Atlanta Division of the Northern District entered an Order Granting Defendant COA's motion for summary judgment regarding Plaintiffs' state law claims but denying Defendant COA's motion for summary judgment regarding Plaintiffs' federal claims. (See p. 29 of Doc. No. 155). Subsequently, Defendant COA filed a Notice of Appeal on April 8, 2013 requesting the Eleventh Circuit of the U.S. Court of Appeals to review the District Court's decision. (See Doc No. 161).

## STATEMENT OF FACTS

On July 14, 2002, Defendant Bunn fired two gunshots that ultimately killed Corey Ward. (Bunn dep., pp. 63, 134). At the time he was shot, Corey Ward was

driving his mother's Tahoe SUV with five other passengers, including Jason Heath, Rodriquez Brown, Jason Smith, Melvin Heath, and Jamal Smith. (Affidavit of Brown attached hereto as Exhibit "A" of Doc. No. 143). At no time on July 13, 2002 did Corey Ward break into a vehicle or commit a crime. (Bunn dep., p. 70; Affidavit of Brown attached as Exhibit "A" of Doc. No. 143). Neither Corey Ward nor any of the passengers in the Tahoe SUV were armed with a gun or any kind of weapon at any time throughout the subject incident. (Bunn dep., p. 88; Affidavit of Brown attached as Exhibit "A" of Doc. No.143). Despite committing no crime, having no weapon, and posing no threat, Defendant Bunn fired two fatal shots at the head of Corey Ward as he was driving the Tahoe SUV out of a parking lot located in the Buckhead area of Atlanta. (Affidavit of Brown attached as Exhibit "A" of Doc. No.143; Bunn dep., p. 63).

It is also undisputed that Defendant Bunn and Officer Mulkey were patrolling in the Buckhead area in an "unmarked vehicle" and in "plain clothes". (See Exhibit "18" attached to the deposition of Bunn). The unmarked vehicle had nothing identifying it as an Atlanta Police Department ("APD") vehicle. (See photograph of Unmarked Vehicle attached hereto as Exhibit "B" of Doc. No. 143).

Wearing dark shirts and pants, Defendant Bunn got out of the unmarked vehicle and began to approach the SUV Tahoe that was parked in a space in the

parking lot. (Bunn dep., p. 17). Defendant Bunn was wearing dark blue jeans and a black T-Shirt with the APD emblem on the back of the black T-Shirt. (Bunn dep., pp. 82-83; See Exhibit "23" attached to deposition of Bunn). Defendant Bunn admits that Corey Ward and the passengers were not able to see the ADP letters on his black T-Shirt as he approached the Tahoe. (Bunn dep., pp. 82-83).

As Bunn approached the Tahoe SUV, Corey Ward was backing his vehicle out a space in the parking lot. During this time, there were no other individuals in or near the parking lot other than Defendant Bunn and Officer Mulkey. (Affidavit of Brown attached as Exhibit "A" of Doc. No. 143). After backing his vehicle out the space, Corey Ward began driving forward in an effort to exit the parking lot. (Affidavit of Brown attached as Exhibit "A" of Doc. No.143). At no time did Corey Ward gun the acceleration of the SUV or drive the SUV at a high rate of speed in the direction of the Defendant Bunn or Officer Mulkey. (Affidavit of Brown attached as Exhibit "A" of Doc. No. 143). At no time did Corey Ward try to run Defendant Bunn or Officer Mulkey over with the Tahoe SUV. (Affidavit of Brown attached as Exhibit "A" of Doc. No. 143). At no time did Corey Ward aim the Tahoe SUV at Defendant Bunn or Officer Mulkey. (Affidavit of Brown attached as Exhibit "A" of Doc No. 143).

As Corey Ward attempted to drive out of the parking lot, Defendant Bunn retreated to the driver side of the unmarked police vehicle. (See photograph of unmarked police vehicle attached as Exhibit "B" of Doc No. 143; Bunn dep., pp. 93-94). Although he was in a safe position and did not fear for his life, Defendant Bunn made the decision to move from the driver side of the police vehicle to the passenger side of the police vehicle. (Bunn dep., p. 139; See photograph of unmarked vehicle attached as Exhibit "B" of Doc. No.143).

As he attempted to move from the driver side of the unmarked police vehicle to the passenger side, Defendant Bunn ran toward the driver side of the Tahoe SUV as it was attempting to the leave the parking lot. (Affidavit of Brown attached as Exhibit "A" of Doc No. 143; Bunn dep., p. 117; Exhibits "12, 13, 14" attached to the deposition of Bunn). Immediately prior to and at the time of the shooting, Defendant Bunn was located to the left of the Tahoe SUV on the driver's side. (Affidavit of Brown attached as Exhibit "A" of Doc. No. 143; Gardner dep., p. 150). Neither Bunn, Mulkey or any other person were standing in the direct path of the Tahoe SUV as Mr. Ward was attempting to leave the parking lot. (Affidavit of Brown attached as Exhibit "A" of Doc No. 143; Gardner dep., p. 150). Corey Ward did not attempt run over any person, or injure any person in any way with his vehicle at any time, including Bunn and Mulkey. (Affidavit of

Brown attached as Exhibit "A" of Doc No. 143). Although Corey Ward's vehicle did go forward before the shooting began, neither Bunn or Mulkey were in front of the SUV at that time, and Ward did not accelerate the vehicle at a high rate of speed toward Bunn or Mulkey. (Affidavit of Brown attached as Exhibit "A" of Doc. No. 143). At no time did the Tahoe SUV appear to be a threat or danger to Defendant Bunn, Officer Mulkey, or anyone else. (Affidavit of Brown attached as Exhibit "A" of Doc No. 143; Ross Gardner dep., pp. 150-152). Despite Corey Ward posing no threat or danger to Bunn or any person, Defendant Bunn fired two fatal shots at the head of Corey Ward as the Tahoe was driving away from him. (Affidavit of Brown attached as Exhibit "A" of Doc No. 143; Bunn dep., p. 63; Autopsy Report of Corey Ward (attached as Exhibit "J" of Doc No. 143).

Soon after the shooting, the City of Atlanta Police Department, the Fulton County District Attorney's Office, and the Georgia Bureau of Investigation conducted an investigation surrounding the death of Corey Ward, including taking photographs, collecting physical data and measurements, and obtaining witnesses statements. (Gardner dep., pp. 47, 53). Pursuant to the evidence obtained from the investigation, a Fulton County grand jury indicted Defendant Bunn with criminal charges of Felony Murder, Aggravated Assault, and Violation of the Oath of Office. (Bunn dep., p. 53). Needless to say, the District Attorney of Fulton

County and a Fulton County grand jury determined that there was sufficient evidence to find that Defendant Bunn was not in any immediate danger prior to the shooting and that his shooting of Corey Ward was unreasonable and not justified.

Viewing the evidence and all factual inferences in the light most favorable to the Plaintiffs, the District Court appropriately denied Defendant COA's motion for summary judgment regarding Plaintiffs' federal claims.

## ARGUMENT AND CITATION OF AUTHORITY

### A. The District Court Applied the Proper Legal Standard and Correctly Ruled that Defendant Bunn was not Entitled to Qualified Immunity.

In their petition for appeal, Defendant COA argues that the District Court erroneously ruled that Bunn was not entitled to qualified immunity. This argument is without merit because the overwhelming facts demonstrate that Bunn's use of fatal deadly force was an "unreasonable search and seizure" in violation of the Fourth Amendment. As outlined in great detail in Plaintiffs' Brief in Response to COA's Motion for Summary Judgment, there is ample evidence that Defendant Bunn used excessive force when he shot Corey Ward. Some of the highlights of the facts include the following:

   1. The fact that Corey Ward did not break into a vehicle or commit any crime. (Bunn dep., pp. 70; 85).

2. The fact that neither Corey Ward nor any of the passengers in the Tahoe SUV were armed with a gun or any kind of weapon. (Bunn dep., p. 88).

3. The fact that Defendant Bunn and Officer Mulkey were investigating an alleged break-in of a vehicle (crime against property); not a violent crime committed against a person. (Bunn dep., p. 70).

4. The fact that the physical evidence shows that Corey Ward did not gun the acceleration of the SUV or drive at a high rate of speed as he was leaving the parking lot. (Gardner dep., pp. 127, 153).

5. The fact that Corey Ward did not aim or try to run over Defendant Bunn or Officer Mulkey prior to and at the time of the shooting.

6. The fact that Defendant Bunn made the conscious decision to move from the driver side of the police vehicle and approach the driver side of the Tahoe SUV prior to and at the time of the shooting. (Bunn dep., p. 139; See photograph of Unmarked Vehicle).

7. The fact that Atlanta Police Department's "Felony Stop" prohibited the actions taken by Defendant Bunn and Officer Mulkey on July 14, 2002.

8. The fact that the physical evidence collected from the scene proves that Bunn was to the left of the Tahoe SUV and not in path of the Tahoe SUV prior to and at the time of the shooting.

9. The fact that the physical evidence collected from the scene proves that Tahoe SUV never struck Bunn and he was not in any danger prior to and at the time of the shooting. (See Gardner dep., pp. 124-125, 152-153).

10. The fact the physical evidence collected from the scene proves that the Tahoe SUV was not a threat or danger to Defendant Bunn, Officer Mulkey, or anyone else at the time of the shooting.

11. The fact that a Fulton County grand jury indicted Defendant Bunn with criminal charges of Felony Murder, Aggravated Assault, and Violation of the Oath of Office for the death of Corey Ward.

In light of the above referenced facts, the Eleventh Circuit has held that when a suspect did not use or did not threaten to use his car as weapon, an officer is not justified in using deadly force to apprehend the suspect. See Morton, 707 F. 3d. at 5. In Tennessee v. Garner, the United States Supreme Court clearly established that the ***"use of deadly force to prevent the escape of all felony suspects, whatever the circumstances is constitutionally unreasonable"***. 471 U.S.1, 11 (1985). The Garner Court also held that ***"where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend does not justify the use of deadly force to do so ... A police officer may not seize an unarmed, nondangerous suspect by shooting him dead."*** Id. Based on the legal precedent established in Garner, the sworn testimony of Rodriquez Brown, the physical evidence from the scene, and the sworn testimony of crime scene analysis expert Ross Gardner, the District Court properly concluded that a jury could reasonably find that Defendant Bunn violated Ward's constitutional rights when he shot him as his vehicle was passing him and "posed

no threat of serious physical harm, either to the officer or others". (p. 14 of Doc. No. 155). For the reasons cited in the District Court's Order, Defendant COA's petition for appeal should also be denied.

**B.    The District Court Applied the Proper Legal Standard and Correctly Ruled that there was Sufficient Evidence for Jury to Find in Favor of Plaintiffs' § 1983 Claim Against COA.**

Second in its' petition for appeal, Defendant COA argues that the District Court erred in denying its' motion for summary judgment under Monell. This argument is directly contradicted by the evidence and testimony in this case. In fact, the documents produced by the City of Atlanta and the sworn testimony of Bunn show that the City of Atlanta ratified and condoned the excessive force actions of Bunn, despite being on notice of his illegal conduct.

Under 42 U.S.C. § 1983, liability of a local governing body, commonly known as Monell liability lies when "action pursuant to official municipal policy of some nature caused a constitutional tort." City of Canton v. Harris, 489 U.S. 378, 385-386. Such Monell liability may attach based on a policy of inaction that demonstrates deliberate indifference to constitutional rights. A policy is a decision that is officially adopted by the municipality or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. Sewell v.

Town of Lake Hamilton, 117 F. 3d 488, 489 (11th Cir. 1997); Brown v. City of Fort Lauderdale, 923 F. 2d 1474, 1479-80 (11th Cir. 1991).

Here, the undisputed records show that the policy and decision makers at COA, including the supervisors and managers of Bunn, implemented a practice of ratifying and condoning the illegal excessive force conduct of Officer Bunn. Prior to the incident in question, Defendant Bunn had over four (4) complaints for excessive force in a two year period prior to the fatal shooting of Corey Ward. (Bunn dep., p. 186; See 9/7/00 Excessive Force Complaint of Ylia Lavender attached as Exhibit "D" of Doc No. 143; See 9/13/01 Excessive Force Complaint of Michael Jascomb attached as Exhibit "E" of Doc No. 143; See 04/11/02 Excessive Force Complaint of Mark Norfleet attached as Exhibit "F" of Doc No. 143). Despite Bunn's long history of excessive force, he was never disciplined for the numerous excessive force complaints made against him. (Bunn dep., p. 186). Although the policy and decision makers of COA were on notice of Bunn's numerous complaints, Defendant COA took no action to stop and/or deter Officer Bunn from his continuous civil rights' violations.

Even more disturbing was City of Atlanta's failure to do anything to Bunn after his use of excessive force involving Ylia Lavender. Based on City of Atlanta's own internal investigation, Ms. Lavender suffered facial contusions,

abrasions, stitches, and a broken eye socket after Officer Bunn hit her in the face during a traffic stop for playing her music too loud. (Bunn dep., p. 11; See Exhibit "D" of Doc No. 143). Despite the clear evidence of excessive use of force by Bunn against Ms. Lavender, the policy and decision makers at City of Atlanta took no action against Bunn, including no discipline or providing additional training. (See Exhibit D of Doc No. 143).[1] Clearly, Defendant COA's refusal to take any action against Bunn for his multiple incidents of excessive force proves that the City of Atlanta had a "custom" or "policy" of ratifying and condoning the "unconstitutional" actions of Bunn and its other officers. See Monell, 436 U.S. at 691 (The U.S. Supreme Court held that a custom is a practice that is so settled and permanent that it takes on the force of law).

In addition to condoning Bunn's conduct, Defendants COA acted with deliberate indifference when they failed to discipline and train Bunn after the numerous complaints of excessive force. In City of Canton v. Harris, 489 U.S. 378, 388-389 (1998), the United States Supreme Court held that a municipality may be held liable under § 1983 if it is deliberate indifferent to an officer's need for training. Significantly, the Supreme Court also stated:

---

[1] Ylia Lavender filed a § 1983 civil rights lawsuit against Raymond Bunn and the City of Atlanta in the Northern District of Georgia and was awarded a jury verdict for violation of her constitutional rights. (Bunn dep., pp. 11-14).

"But, it may happen in the light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city responsible, and for which the city may be held liable if it actually causes injury." City of Canton, at 390.

By not discipline or training Bunn, the City of Atlanta ratified and condoned Bunn's use of excessive force. As a consequence, Officer Bunn felt that his use of excessive force was acceptable behavior for the City of Atlanta Police Department. This lack of training and ratification of his behavior led Bunn to believe that his use of excessive force was within the policies and customs of the City of Atlanta Police Department. (Bunn dep., p. 185-186). Significantly, Bunn testified to the following when he was asked about his conduct on the night of the shooting:

**Q:   All the conduct and actions you took in this case with Corey Ward from the time you drove into the parking lot to the time you fired the shots, you believe were in accordance to your training and the procedures that you were told to do as an Atlanta Police Officer by your superiors and your supervisor, isn't that correct?**

**A:   Yes, I do.**

> Q: Did you have any other excessive – how many excessive force complaints have been made against you, do you know?
>
> A: I don't know.
>
> Q: More than four?
>
> A: I would say four, four or more.
>
> Q: Okay. Have you ever been disciplined for any of those excessive force complaints made against you?
>
> A: No, sir.

(Bunn dep., pp. 185, lines 22-25; p. 186, lines 1-17).

Bunn's testimony proves that he believed that his illegal actions were appropriate on the night of the shooting because he had never been disciplined, trained or told that his use of excessive force was improper. For reasons set forth in the District Court's Order, Defendant COA's petition for appeal should be denied.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that Defendant City of Atlanta's Notice of Appeal and Petition for Discretionary Appeal be denied it its entirety.

Respectfully, Submitted this  16th  day of April, 2013.

**COCHRAN, CHERRY, GIVENS, SMITH, SISTRUNK, & SAMS, P.C.**

/s/Shean D. Williams
**Hezekiah Sistrunk, Jr., Esq.**
Georgia Bar No. 649413
**Shean D. Williams, Esq.**
Georgia Bar No. 764139
**M. Gino Brogdon, Jr. Esq.**
Georgia Bar No. 949808
*Attorneys for the Plaintiffs*

1400 The Candler Bldg.
127 Peachtree Street, NE
Atlanta, Georgia 30303
(404)222-9922
(404)222-0170 (fax)

IN THE UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOHN ARNOLD and MONESIA YOUNGBLOOD, Individually and as Co-Administrator of the Estate of COREY WARD, Deceased<br><br>      Plaintiffs,<br><br>vs.<br><br>RAYMOND S. BUNN, individually and in his Official Capacity as a Police Officer of the City of Atlanta Police Department; et al. | CIVIL ACTION NO:<br>1:03-CV-0087-CAP |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the within and foregoing **PLAINTIFFS' OBJECTION AND BRIEF IN REPLY TO DEFENDANT CITY OF ATLANTA'S NOTICE OF APPEAL** on all counsel of record via the CM/ECF system to:

William J. Atkins, Esq.
David B. Fife, Esq.
Atkins & Fife, LLC
6400 Powers Ferry Road, Suite 355
Atlanta, Georgia 30339

Robert N. Godfrey, Esq.
Tamara N. Baines, Esq.
LaShawn W. Terry, Esq.
City of Atlanta Law Department
68 Mitchell Street, SW, Suite 1400
Atlanta, Georgia 30303-3520

This 16th day of April, 2013.

/S/Shean D. Williams
**Shean D. Willliams, Esq.**
State Bar No. 764139
sdw@sistrunklaw.com
*Attorney for Plaintiffs*

**COCHRAN, CHERRY, GIVENS, SMITH, SISTRUNK & SAMS, PC**
1400 The Candler Building
127 Peachtree Street, N.E.
Atlanta, Georgia 30303
404.222.9922
404.222.0170 (Fax)